## PARKERSBURG *v.* BROWN.

1. The act of the legislature of West Virginia, of Dec. 15, 1868, c. 118, authorizing the city of Parkersburg to issue its bonds for the purpose of lending the same to persons engaged in manufacturing, is invalid, and the bonds issued under it are, as against the city, void.

2. As the consideration for bonds to the amount of $20,000, issued by the city to M., under that act, he, to secure the payment to the city of the semi-annual interest on $20,000, and of annual instalments on the principal, conveyed to J., as trustee, certain real estate and personal property, with a power of sale in case of default. The bonds were payable to M. or order. He indorsed them in blank and sold them to A. and B., who bought them for value, in good faith. M. paid one instalment of interest on them to the city. The latter made five payments of interest. It then took into its possession the property, and refused to make further payments. A suit in equity was instituted by the holders of the bonds against the city, but was not brought to a hearing for nearly three years. M., although a party thereto, made no defence. The bill prayed for a receiver of the property, but none was applied for; and the city having been allowed

to control and manage the property meantime, acted in good faith and with reasonable discretion, in taking care of it and disposing of some of it. *Held*, 1. The bonds are void because the necessary amount to pay them and the interest thereon was to be raised by taxation, which, not being for a public object, the Constitution of the State did not authorize, and the legislature had no power to pass the act. 2. Neither the payment of interest on the bonds by the city, nor the acts of its officers or agents in dealing with the property, operate, by way of estoppel, ratification, or otherwise to render the city liable on the bonds. 3. M. had a right to reclaim the property and to call on the city to account for it, in disaffirmance of the illegal contract, the transaction being merely *malum prohibitum*, and the city being the principal offender. Such right passed to the complainants as an incident to the bonds. 4. This court orders a decree to be entered declaring that the city exceeded its lawful powers in issuing the bonds, and that they cannot be enforced as its obligations, and providing for a sale of the remaining property, and for an account, wherein the city is to be credited with the sums it had in good faith paid for the acquisition, protection, preservation, and disposition of the property, and for insurance and taxes, and for interest on the bonds, and to be charged with what it had received, but not with any sum for loss of, or damage to, or depreciation of, the property, and ordering the distribution among the complainants of the net proceeds of the sale and the net amount of money, if any, remaining in the hands of the city, received from M. or from the sales by it of any of the property.

APPEAL from the Circuit Court of the United States for the District of West Virginia.

The case is stated in the opinion of the court.

*Mr. C. C. Cole* and *Mr. William A. Cook* for the appellant.

*Mr. B. M. Ambler, Mr. William A. Fisher,* and *Mr. Charles Marshall, contra.*

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 15th of December, 1868, the legislature of West Virginia passed an act which provided as follows, c. 118 : —

"SECT. 1. That the mayor and council of the city of Parkersburg are hereby authorized and empowered to issue the bonds of said city to an amount not exceeding two hundred thousand dollars, for the purpose of lending the same to manufacturers carrying on business in or near the said city, in the said county of Wood. The said bonds shall run twenty years, and bear interest at the rate of six

per centum per annum; and they shall be issued upon the recommendation of the following-named persons, who shall be considered the trustees of said loan, that is to say: . . . who shall have power to fill all vacancies that may occur in their number. They shall have power to make loans of said bonds to good, solvent companies, or individuals, on the following terms, that is to say: When persons engaged in manufacturing shall have invested in their business thirty-five (35) per cent. of the amount proposed to be employed in the business of manufacturing, clear of all liabilities, to be shown to said trustees by affidavits of the applicants, or by other satisfactory evidence, and when such proof is furnished, then said trustees, five members concurring, may lend to such applicants such amounts of said bonds as they may deem proper and judicious, not, however, to exceed sixty-five per cent. of the capital proposed to be used in manufacturing by the applicant: *Provided, however,* when such loans shall be made, the interest thereon shall be paid by the borrower semi-annually to the treasurer of said city; and five per cent. of the principal shall be paid annually to the said city by the borrower, to be placed to the account of the sinking fund of said city, until the several loans are paid in full. The said loans shall be secured by deed of trust or mortgage on real estate, or by other satisfactory security, sanctioned by said trustees: *And provided, also,* that no bonds shall be issued under this section until a majority of the qualified voters of said city concur in the same, by voting for or against the same, at an election to be held for that purpose."

On the 17th of April, 1869, an election was held in the city of Parkersburg, under authority of an ordinance passed by the mayor and city council of said city, " upon the proposition to authorize the said city council to issue bonds of the said city to the amount of two hundred thousand dollars, to be loaned to manufacturers under the provisions of said law and said ordinance." At said election 441 votes were cast in favor of said proposition, and 19 against it.

On the 6th of September, 1870, a communication having been received by the city council from M. J. O'Brien & Brother in regard to the erection of a manufacturing establishment and marine railway within the city limits, it was " resolved that the council agree, when the trustees of the improvement loan certify that the Messrs. O'Brien and Bro. have satisfactorily

secured the bonds loaned to them, and complied with the act of the legislature authorizing the loan of said bonds, that they will release said parties from city taxation on their property, to the amount of bonds invested in the same, not exceeding twenty thousand dollars: *Provided, however*, the release shall extend so long as the said property shall be used or operated as a manufacturing establishment and marine railway, but not in any event to exceed twenty years."

Nothing further was done on the subject until after section 8 of article 10 of the new Constitution of West Virginia went into operation on the 22d of August, 1872, which is as follows:—

" 8. No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted, in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; nor without, at the same time, providing for the collection of a direct annual tax sufficient to pay, annually, the interest on such debt, and the principal thereof within, and not exceeding, thirty-four years: *Provided*, that no debt shall be contracted under this section, unless all questions connected with the same shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same."

On the 22d of April, 1873, the city council adopted the following resolution:—

" Be it resolved by the mayor and council of the city of Parkersburg, that, in the event of the firm of M. J. O'Brien & Brother taking from the city a loan of twenty thousand ($20,000) dollars of its bonds authorized under former resolution, dated September 6th, 1870, for manufacturing purposes, and paying punctually the interest thereon and five per cent. (5) of the principal for sixteen years, the said firm be released from any further payments and the balance of said bonds be paid by the city, and the said M. J. O'Brien & Brother are released from making a marine railway."

At a meeting of the city council on the 13th of May, 1873, the trustees of said loan made a report, showing that they had adopted the following resolution : —

" Whereas, M. J. O'Brien and W. S. O'Brien, composing the firm of M. J. O'Brien & Brother, are desirous of obtaining a loan of the bonds of the city, under and by authority of an act of the legislature of West Virginia, passed December 15, 1868, for manufacturing purposes, to the amount of $20,000, for the purpose of aiding them in the erection of a foundry and machine works in the city of Parkersburg; and whereas, for the purpose of erecting these works, they have bought of Mrs. Joanna Wait, widow of Walton Wait, deceased, and also from her as the guardian of Bettie C. Wait; infant heir of Walton Wait, deceased, lot No. 80 in said city of Parkersburg, on Kanawha Street, being 85 by 170 feet, and have received a conveyance from her of said lot, both as the widow of said Walton Wait and as the guardian of said Bettie C. Wait; and whereas it appears, by a schedule of personal property of said M. J. O'Brien & Brother, verified by affidavit, and now in the hands of the city attorney, that said M. J. O'Brien & Brother are the owners of $15,000 worth of personal property in their works at Volcano, free of incumbrance, we, therefore, recommend to the city council of the city of Parkersburg, upon the said M. J. and W. S. O'Brien and their wives executing a deed of trust to the said city on the said $15,000 worth of personal property, as well as upon the said lot No. 80, the city council to take from Mrs. Joanna Wait, or some one for her, bank stock, with power of attorney to dispose of the same, or solvent bonds, to the amount of $5,000, as security that said Joanna Wait, guardian, will obtain from the Circuit Court of Wood County, within two years, authority to convey to M. J. and W. S. O'Brien the said lot No. 80, for and on behalf of said ward, and when said authority is obtained, and said deed made, said stock or bonds to be given up, then the city council may deliver to said M. J. and W. S. O'Brien, upon the deposit of the aforesaid collaterals, $10,000 of said city bonds; and when said M. J. and W. S. O'Brien have put a building or buildings on said lot ready for the roof, costing not less than $8,000 when completed, shown by bills rendered and authenticated for same to the council, and when said Joanna Wait, guardian of said Bettie C. Wait, by the authority of the said Circuit Court of Wood County, has conveyed for and on behalf of her said ward the said lot No. 80, free of incumbrance, to said O'Brien & Brother, or made a further deposit of bank stock or

bonds to the amount of $8,000, under the conditions aforesaid, as security that she will obtain such authority within two years from the date hereof, and make said conveyance, which shall be held by said city as security for the payment of said bonds and interest until said deed is made by authority of said court, then said city council may deliver to said M. J. O'Brien & Brother the remaining $10,000 of said bonds; and said city council shall take, as a further security for the payment of said bonds and interest, from said M. J. O'Brien & Brother, to be deposited with the city treasurer, their insurance policies, amounting to $14,500, transferred to the said city, on their machinery, stock, &c., at Volcano; and when their buildings on said lot are completed, and the machinery thereon erected, then the said M. J. O'Brien & Brother shall have the whole insured to the amount of $15,000, and keep the same so insured for the benefit and security of said city on account of said loan."

At the same time the city attorney presented to the council a trust deed executed by "said O'Brien & Brother," which was accepted, and it was resolved " that, upon the execution of the trust by M. J. O'Brien & Bro., the clerk is authorized to issue immediately $10,000, part of city bonds, as agreed upon by the resolution of the 22d of April, 1873."

The trust deed, which was executed by the two O'Briens and their wives, and acknowledged by them on the 13th of May, 1873, and recorded on the 18th of June, 1873, is in these words : —

" This deed, made the thirteenth day of May, A. D. 1873, by M. J. O'Brien and P. F. O'Brien, his wife, and W. S. O'Brien and Jane C. C. O'Brien, his wife, parties of the first part, and Okey Johnson, trustee, party of the second part, witnesseth : That for and in consideration of one dollar in hand paid by the said trustee to the parties of the first part, the receipt whereof is hereby acknowledged, the said parties of the first part hereby grant unto the party of the second part all, &c., of the following property, to wit : All that certain lot of ground situate on Kanawha Street, in the city of Parkersburg, known as lot No. 80 on the plat of said town, and being the same lot conveyed by Joanna M. Wait, guardian of Betty C. Wait, and Joanna M. Wait in her own right, to the said parties of the first part by deed dated the twelfth day of May, 1873, and all the personal property mentioned in Schedule A, and hereunto annexed

ahd made part and parcel of this deed, said property now situated at Volcano, in the county of Wood, and valued at fifteen thousand and forty$\frac{38}{100}$ dollars, which said last-named property is permitted to remain in the possession of the parties of the first part, and to be removed from Volcano aforesaid and placed in the building or buildings to be erected by said parties on the lot aforesaid, until the same shall be required by the party of the second part, upon being made as hereinafter specified, that is to say: Whereas an act passed December 15, 1868, by the legislature of West Virginia, authorizing the mayor and city council of the city of Parkersburg to lend its bonds for manufacturing purposes, to which act reference may be had for a more explicit understanding of the provisions; and whereas the parties of the first part have negotiated with the said city for a loan of its bonds to the amount of twenty thousand dollars, according to the provisions set forth in an ordinance passed by the said city council the twenty-second day of April, 1873, whereby it is, among other things, provided that if the parties of the first part shall punctually pay the interest on the aforesaid sum of twenty thousand dollars, and five per centum of the principal for sixteen years, the said parties of the first part shall be released from any further payment, which said ordinance was authorized under a former ordinance, dated September 6, 1870, to both of which ordinances reference may be had for a fuller understanding thereof, and are made part hereof, which negotiation for the aforesaid loan of $20,000 of the bonds of the said city is made on the part of said city pursuant to a recommendation in writing made by the trustees of said loan, as provided in said act of the legislature, to which recommendation in writing reference may be had for a fuller understanding thereof, and. is made part hereof, in trust to secure the faithful performance by the parties of the first part, in their payment of the aforesaid interest on said twenty thousand dollars, and the payment of the five per centum of the principal, as specified in the aforesaid ordinance passed the twenty-second day of April, 1873. And if any default shall be made herein, then the party of the second part, as trustee aforesaid, shall proceed to sell the property hereby conveyed, pursuant to the provisions of chapter 72 of the Code of West Virginia, and the acts amendatory thereto."

Exhibit A, annexed to the trust deed, contained a list by items of the personal property, with a valuation opposite each item, the same being principally machinery and tools. Attached to it was an affidavit made by M. J. O'Brien, setting

forth that M. J. O'Brien & Brother owned all the property free of incumbrance, and that each item was worth the sum set down opposite to it, and that the whole was then worth $15,000.

On the 10th of June, 1873, an order was adopted by the council, reciting the statute, and the election, and the prior proceedings of the trustees of the loan and of the council, and the presentation of the deed of trust and the deposit of the $5,000 security, and of the insurance policies before provided for, and then ordered that the said security was satisfactory, and that $10,000 of the bonds of the city be delivered to M. J. O'Brien & Brother " forthwith, under the conditions of and in accordance with " the said act " and the orders made September 6, 1870, and April 22, 1873, made and intended to be made by authority of said act of legislature, and to be controlled by and construed according to its provisions," and further ordered that when Mrs. Wait should make the deed to lot No. 80, the $5,000 security should be given up.

Thereupon $10,000 of the bonds were delivered to the O'Briens. Each bond was a certificate of indebtedness for $500, payable to M. J. O'Brien & Brother, or order, dated June 1, 1873, sealed with the seal of the city and signed by the mayor and the clerk, payable June 1, 1893, at Parkersburg, with interest at the rate of six per cent per annum, payable semi-annually, June 1 and December 1, in the city of New York. Coupons payable to bearer for each payment of interest were attached. Each bond contained this statement: " This certificate is issued by authority of the act of the General Assembly of the State of West Virginia, passed December 15, 1868."

On the 9th of September, 1873, the city council passed the following order : —

" It appearing to the satisfaction of the council that M. J. O'Brien & Brother have their buildings, which, when completed, will cost more than eight thousand dollars, now up and ready to be roofed, and have therefore complied with the recommendation of the manufacturers' loan, and the former orders of the council in that respect, it is ordered that as soon as Mrs. Joanna Wait, or some one for her, shall deposit with the city treasurer bonds to the amount of

$8,000, or bank stock, with power of attorney to dispose of the same, as collateral security that she will obtain within two years from the 13th of May, 1873, the authority from the Circuit Court of Wood County to make for and on behalf of her ward, Bettie C. Wait, a deed to said M. J. O'Brien & Brother, for lot No. 80 in the city of Parkersburg, that the mayor of the city of Parkersburg is directed to deliver, properly signed by himself and attested by the clerk of the council, the remaining ($10,000) ten thousand dollars of the bonds of the city of Parkersburg, as provided for by former orders of this council."

The second lot of $10,000 of the bonds were thereupon issued to M. J. O'Brien & Brother, the bonds being in the same form as the others. No other proceedings of the city council appear as to the issuing of the bonds.

The bonds were all of them indorsed in blank by M. J. O'Brien & Brother, and were sold by them at eighty cents on the dollar, $10,000 in June, 1873, and $10,000 in September, 1873. The appellees are the owners of the entire $20,000 of bonds, and are *bona fide* holders of them. The O'Briens paid to the city the $600 of interest falling due Dec. 1, 1873, and the city paid the coupons due that day. The O'Briens paid no more. The city paid the coupons which fell due in June and in December, 1874, and in June and December, 1875. It paid no more.

The coupons which fell due June 1 and Dec. 1, 1876, not having been paid, the plaintiff, Isabella Brown, owning $5,000 of the bonds, filed this bill on behalf of herself and all other holders of the bonds who should unite in the suit, setting forth the said act of December, 1868, the election, the action of the trustees of the loan and of the city council, the giving of the security, the execution and recording of the deed of trust, and the issuing of the first $10,000 of bonds. Her $5,000 of bonds are part of those bonds. The bill sets forth the proceeding for the issuing of the rest of the bonds and their actual issue. It avers that the holders of all of the bonds are *bona fide* holders for value. The defendants in the suit are the city of Parkersburg, the two O'Briens and their wives, and the assignee in bankruptcy of the O'Briens.

In November, 1873, the O'Briens and their wives executed

to said Johnson a deed for said lot No. 80 and for another lot, in trust to secure one Leach for his indorsement of a promissory note of the O'Briens for $3,000, with power to sell the land in case the note should not be paid. On the 9th of November, 1874, Johnson sold lot No. 80 and its appurtenances at auction, under said last-named trust deed, to the city of Parkersburg, and, on the 8th of December, 1874, executed to the city a deed of it, which recited that the sale of the lot was " subject to a trust thereon in favor of the city of Parkersburg for $20,000," and that the sale was for $300, and conveyed the lot and its buildings and appurtenances to the city " subject to the lien of the said city aforesaid."

The bill sets forth said sale and conveyance, and avers that the city has, since said purchase, claimed said real estate as being its property, and has rented it, and is now claiming it and exercising to some extent rights of ownership over it; that after the deed from the O'Briens to Johnson was executed they were adjudged bankrupt, and their assignee in bankruptcy was permitted, without objection on the part of the city, to take possession of the movable tools and machinery covered by said deed; that said chattels were sold by said assignee to various purchasers, and became scattered and deteriorated in value; that some were sold subject to the claim of the city, and others without such reservation; that the city continued to pay the interest on the bonds until the maturity of the coupons which became due June 1, 1876, when it refused to pay them, and has paid no more and refuses to recognize the obligations of the bonds and coupons, on the ground that they were issued by the city without lawful authority; and that the city has neglected the real estate and the improvements and fixed machinery on it, and the buildings are unoccupied and unprotected, lying open to the weather and to depredations, and no care is used in protecting the buildings and machinery, and many valuable parts of the machinery have thus been lost. The bill alleges that the deed of trust to the city was executed for the purpose of securing the holders of the bonds and coupons, and they are the parties beneficially interested in the same, and the city is a trustee of all the property mentioned in the deed, for the holders of the bonds; that the city was

bound to care for the property and protect the title to it for the benefit of the *cestuis que trust*, and especially as it had induced them to purchase the bonds, as well in reliance on the deed as on the credit of the city; that the city was, as trustee, bound to interpose to prevent the sale of the chattels by the assignee in bankruptcy, and to place the property in the charge of a responsible custodian, and protect it from depredation, and that, in failing to exercise such care and in permitting such sale, the city has violated the duties assumed by it from its acceptance of the deed, and has become liable to account to the holders of the bonds for all the loss and injury which have occurred to said real estate and chattels by reason of such neglect; and that the owners of the bonds are entitled to the interposition of a court of equity for the care and protection of the property, and to a decree for the sale of such of it as remains upon the premises mentioned in the deed to the city, and for the sale of the real estate, and to a decree against the city requiring it to account for and pay over to the holders of the bonds all such moneys as have been lost to them from such neglect, and to pay to them any balance which may remain due to them after applying all sums which may result from such sales and accounting. The prayer of the bill, as originally filed, is for the appointment of a receiver to take charge of the property, and the appointment of a trustee to make sale of it, and the distribution of the proceeds of sale among the owners of the bonds and coupons, and that the city account for and pay over to them the value of the chattels so lost or sold, and for such loss as has resulted by reason of such neglect of duty on the part of the city in the care of the property, and the rents and profits received by the city from the property, and that the city and the O'Briens pay to the owners of the bonds any deficiency in the principal and interest thereof which may remain after the payment of the sums resulting from the sales and accounting aforesaid.

The city answered the bill, setting up various defences. One is that a majority of the qualified voters of the city did not vote at said election in favor of authorizing the issuing of bonds under the act of 1868. Another is that the voters voted on the question of authorizing the issue of bonds generally

under the act, and not on the question of issuing the particular bonds. Another is that the issuing of said bonds had not been authorized prior to the 22d of August, 1872, when said section 8 of article 10 of the new Constitution of West Virginia became operative; that said section governed in the issuing of said bonds; and that they were issued in violation thereof, in that the payment thereof was not provided for at the time of the issuing thereof, as required by said section, and all questions connected with the same were not first submitted to a vote of the people, as therein required, and said bonds are void. Another is that the act of 1868 was in violation of the Constitution of the State. Another is that at the time of the passage of said act the city had, and now has, no property out of which it could pay any such bonds, except such funds as it is or may be authorized by law to raise by taxation. Another is that the bonds were issued in aid of a private enterprise, for individual profit, and not for a public purpose; that it is in excess of the constitutional power of the legislature of the State to authorize taxation for the purpose of paying said bonds, unless that power was clearly conferred on it by the Constitution of the State; that no such power was conferred on it by the Constitution of the State in force at the time of the passage of said act or the one now in force; that the said act is void for want of power in the legislature to pass it; and that the bonds issued under it are void. Another is that the bonds are void because they were issued in violation of section 9 of article 10 of the Constitution of the State in force at the time they were issued, which provides that the legislature may, by law, authorize the corporate authorities of cities to assess and collect taxes for corporate purposes; that said provision amounts to a prohibition against assessing and collecting taxes for any other than a corporate purpose; and that said bonds, being issued for a private and not for a corporate purpose, are void. The answer alleges that if any property covered by the deed of trust was sold by the assignee in bankruptcy, it was sold by him subject to said deed of trust. It denies the allegations of the bill as to the neglect of the city to protect and care for the buildings and machinery. It avers that it is not chargeable with the care of the property; but that it has taken as good care of the same as

was possible under the circumstances, and has used all due diligence to rent it. It denies that the deed of trust was executed to secure the holders of the bonds and coupons, and denies that the city was or is a trustee for them of the property covered by the deed, and denies that it induced any person to take the bonds. It avers that it is not competent for the city to act as trustee in such a matter, wholly foreign to the purpose of its creation ; that it has paid out, as interest on the bonds and expenses attending the issuing of them, and taxes on the property, more than it has received from all sources on account of the property ; and that the complainant has a plain and adequate remedy in a court of law. It denies the right of the complainant to any decree against it for any sum in any event, whether the court shall deem the complainant entitled to a sale of the property mentioned in the deed of trust or otherwise. Finally, the answer says that if the court shall be of opinion that it has any jurisdiction in the premises, or that the complainant is entitled to resort to the property for the payment of the bonds or the interest thereon, the city is willing to submit to any order to be made by the court in relation to the disposition of the property, upon the court pronouncing the bonds void and the city not liable on account thereof, but it prays that in any order to be made the city may be decreed to receive out of the proceeds of any sale of the property the sum it has so expended above its receipts.

The bill was taken as confessed as to all the defendants except the city. The holders of all the bonds were made parties complainant. Proofs were taken on both sides. The bill was then amended so as to aver also that the city is estopped, by her conduct, to deny the validity of her indebtedness according to the tenor and effect of the bonds and coupons, and so as to add to the prayer for relief the following : " Or that the said city of Parkersburg may be decreed to pay the said bonds and coupons according to the tenor thereof, and especially that a decree may be passed for the payment of the overdue coupons upon the said bonds." The bill was further amended so as to allege that even if the city was not chargeable as trustee from the time of the execution of the deed of trust, it is chargeable with all the duties and liabilities of a trustee, in regard to all

of the property, from the respective times at which it actually took possession of the same; and the grantee in the deed of trust was made a defendant and appeared. The case was brought to a hearing, and a decree was made, which states that the court is of opinion that the city is indebted for the bonds and coupons and is responsible for their payment according to their tenor and effect, that the $20,000 of bonds are held by the several complainants in amounts severally specified, and that there are due to them severally certain specified sums for interest coupons due and unpaid upon the bonds (being interest from and including June 1, 1876, to and including June 1, 1879), with interest from the date of the decree; and then decrees that the complainants are entitled to have the bonds held by them respectively paid by the city at the maturity of the same, with interest payable at the times and in the manner stated in the interest coupons attached to the bonds, and that the complainants respectively recover against the city for the several sums so set out as due for interest on the bonds, and interest on the same from the date of the decree, and costs, and have execution therefor. From this decree the city has appealed to this court.

The bill, as filed, asked for equitable relief, and sought to charge the city as a trustee and to reach the property covered by the deed of trust. The relief granted by the decree was a simple money judgment against the city, for the interest due on the bonds at the date of the decree, based on the legal liability of the city to pay the bonds and coupons. For this there was a plain, adequate, and complete remedy at law, in each bondholder, if the city was thus liable. So that the decree made could not be sustained in any event.

But we are of opinion that, within the principles decided by this court in the case of Loan Association v. Topeka, 20 Wall. 655, the bonds in question here are void. The act of 1868 authorizes the bonds to be issued as the bonds of the city. The principal and interest are to be paid by the city. The bonds are to be lent to persons engaged in manufacturing. Those persons are to pay the interest on the "loans" semi-annually to the treasurer of the city, and are also to pay annually to the city five per cent of the principal, to go into the sinking

fund of the city, till the " loans " are paid in full.   No fund is
provided or designated out of which the city is to pay the prin-
cipal or interest of the bonds.   What the " borrower," as the
act calls him, is to so pay to the city is not such a fund.   The
city is to pay the principal and interest of the bonds, according
to their tenor, whether the " borrower " pays the city or not.
No other source of payment being provided for the city, the
implication is that the city is to raise the necessary amount by
taxation.   It has, by sect. 15 of the act of March. 17, 1860,
authority to levy and collect an annual tax on the real estate
and personal property and tithables in the city, and upon all
other subjects of taxation under the revenue laws of the State,
which taxes are to be for the use of the city.   A legitimate
use of the moneys so raised by taxation is to pay the debts of
the city.   Taxation to pay the bonds in question is not taxa-
tion for a public object.   It is taxation which takes the private
property of one person for the private use of another person.
There is, in the act of 1860, a provision that the tax shall not
exceed a given percentage of the assessed value of the property
or so much on every tithable, but it does not appear that a tax
for these bonds would exceed the limit.   Therefore, the infer-
ence that it was intended, by the act of 1868, that such taxa-
tion as should be necessary to pay the bonds should be resorted
to, must remain in full effect.   There was no provision in the
Constitution of West Virginia of 1862 authorizing the levying
of taxes to be used to aid private persons in conducting a private
manufacturing business.   This being so, the legislature had no
power to enact the act of 1868.

There having been a total want of power to issue the bonds
originally, under any circumstances, and not a mere failure to
comply with prescribed requirements or conditions, the case
is not one for applying to the city, under any state of facts,
any doctrine of estoppel or ratification, by reason of its having
paid some instalments of interest on the bonds (*Loan Associa-
tion* v. *Topeka, ubi supra*), or by reason of any of the acts of its
officers or agents in dealing with the property covered by the
deed of trust.   No such acts can give validity to the statute or
to the bonds, however they may affect the *status* of the prop-
erty dealt with or the relation of the city to such property.

But it is contended by the appellees that, independently of the original validity of the bonds, the city is liable to pay them, because it misled and prejudiced their holders, and prevented them from resorting to the security, or because it received the full value of the bonds in consideration of paying them. It is urged that if the bonds were void the city had no right to meddle with the security. There has, however, never been any impediment to a resort by the holders of the bonds to proceedings to have the property covered by the deed of trust administered for and appropriated to their benefit, as representing the O'Briens in respect to such property, and as subrogated to the rights of the O'Briens to have the property devoted to the payment of the principal and interest of the bonds, in view of their being void. The only misleading or prejudice was that the holders of the bonds, mistaking the law, supposed them to be valid obligations of the city. As to the receipt of property by the city, it received certain property, but it did not thereby enter into any obligation, even if it could have done so, to pay these bonds. The evidence shows that the city has endeavored, in a proper way and with a due regard to the interests of the O'Briens and of those interested under the O'Briens, to preserve and protect the property and realize from it as much as could be realized. The bill in this case was filed in December, 1876. The case was heard in September, 1879. The bill prayed for a receiver of the property, yet none was appointed or applied for, so far as appears. The sales by the city of movable property, which are complained of, took place after this suit was brought. The plaintiffs have chosen to leave all the property in the hands of the city up to this time. The city has acted in good faith, and with reasonable discretion, in regard to the property, throughout. No valuation placed upon the property, real or personal, or any part of it, by way of estimate or opinion, at the time the city took possession of it, or at any time since, can be taken, on the evidence in this case, as the measure of any liability of the city on the bonds or in respect of the property. Neither the O'Briens nor the plaintiffs interposed to control the property, but left the city to control and manage it. There are not about the acts of the city, in regard to the property, any elements which can consti-

tute the city a trustee of the property, with the duties imposed on a trustee. No trust arose in favor of the plaintiffs out of the deed of trust to Johnson. The trust thereby created was one to secure the payment by the O'Briens to the city of the interest on $20,000 and of the principal of that sum. The plaintiffs could not enforce that trust in the place of the city. It was a void trust, because the consideration of it was the issuing of the void bonds. Nor did the purchase by the city of the property which it bought subject to the trust validate the original trust or create a new one.

But, notwithstanding the invalidity of the bonds and of the trust, the O'Briens had a right to reclaim the property and to call on the city to account for it. The enforcement of such right is not in affirmance of the illegal contract, but is in disaffirmance of it, and seeks to prevent the city from retaining the benefit which it has derived from the unlawful act. 2 Com. Cont. 109. There was no illegality in the mere putting of the property by the O'Briens in the hands of the city. To deny a remedy to reclaim it is to give effect to the illegal contract. The illegality of that contract does not arise from any moral turpitude. The property was transferred under a contract which was merely *malum prohibitum*, and where the city was the principal offender. In such a case the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received. *White* v. *Franklin Bank*, 22 Pick. (Mass.) 181; *Morville* v. *American Tract Society*, 123 Mass. 129; *Davis* v. *Old Colony Railroad*, 131 id. 258, 275; and cases there cited. The O'Briens having indorsed and sold the bonds, the holders of the bonds succeeded to such right of the O'Briens, as an incident to the ownership of the bonds. The O'Briens suffered the city to take possession of and administer the property. They were made parties to this suit originally, and have made no defence to it. The right which the plaintiffs so have to call on the city to render an account of the property is one which can be properly adjudicated in this suit in equity. It involves the taking of an account, the sale under the direction of the court of what remains of the property, and the ascertainment of the proper charges to be allowed to the

city against the moneys it has received and against the proceeds of sale. There can be no doubt that the city is entitled to be credited the sums it has paid in good faith to acquire, protect, preserve, and dispose of the property, and for insurance and taxes, and the amount it has paid in paying the coupons it has paid, and that it is to be charged with what it has received. But it is not to be charged with any sum for loss of or damage to or depreciation of the property. The remaining property must be sold under the direction of the court below, and an account be stated on the foregoing principles, and the net proceeds of the sale and the net amount of money, if any, in the hands of the city, must be distributed among the plaintiffs. The decree of the Circuit Court must be reversed, with costs, and the case be remanded to that court, with instructions to enter a decree declaring that the city, in issuing the bonds, exceeded its lawful powers, and that they cannot be enforced as obligations of the city, and providing for a sale of the remaining property, real and personal, under the direction of the court, and the taking of an account between the city and the property, on the basis stated in this opinion, and the application, in conformity with this opinion, of the net proceeds of the sale, and of the net amount of money, if any, remaining in the hands of the city, received from the O'Briens, or from the sales by it of any of the property received by it, and for such further proceedings in the case as may be in conformity with this opinion.

We have not deemed it necessary to consider the question whether the bonds were void as having been issued in violation of section 8 of article 10 of the Constitution of West Virginia of 1872, or the question whether the act of 1868 required a vote by the voters of the city on each loan of bonds to be made, or the question whether the act of 1868 was observed in other respects, in issuing the bonds.

*Decree reversed.*