## COLE *v.* LA GRANGE.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF MISSOURI.

Submitted December 8, 1884.—Decided January 5, 1885.

The general grant of legislative power in the Constitution of a State does not
authorize the legislature, in the ecxerise either of the right of eminent
domain, or of the right of taxation, to take private property, without the
owner's consent, for any but a public object.

The legislature of Missouri has no constitutional power to authorize a city to
issue its bonds by way of donation to a private manufacturing corporation.

This was an action to recover the amount of coupons for
interest from January 1, 1873, to January 1, 1880, attached to
twenty-five bonds, all exactly alike, except in their serial num-
bers, and one of which was as follows:

"United States of America:
State of Missouri, City of La Grange.

No. 23. $1,000.

"Know all men by these presents, that the City of La
Grange doth for a good, sufficient and valuable consideration
promise to pay to the La Grange Iron and Steel Company or

bearer the sum of one thousand dollars in current funds, thirty years after the date hereof, at the third National Bank, City of New York, together with interest thereon at the rate of eight per cent. per annum, payable annually in current funds on the first day of each January and July ensuing the date hereof on presentation and surrender of the annexed interest coupons at said Third National Bank.

"This bond is issued under an ordinance of the City Council of the said City of La Grange, passed and approved September 22d, 1871, under and in pursuance of an act of the legislature of the State of Missouri, entitled 'An act to amend an act entitled an act to incorporate the City of La Grange,' approved March 9th, 1871, which became a law and went into force and effect from and after its said approval.

"This bond to be negotiable and transferable by delivery thereof.

"In testimony whereof the City Council of the City of La Grange hath hereunto caused to be affixed the corporate seal of said city and these presents to be signed by the mayor and countersigned by the clerk of the city council of said city this 14th day of December, 1871.

[SEAL.]                        J. A. HAY, Mayor.
                               R. McCHESNEY, Clerk."


The petition alleged that the city of La Grange on December 14, 1871, executed the twenty-five bonds, and delivered them to the La Grange Iron and Steel Company, under and by virtue of the authority contained in section 1 of article 6 of the city charter, as amended by an act of the legislature of Missouri, approved March 9, 1871 (which section, as thus amended, was set forth in the petition, and is copied in the margin),* and under and by virtue of an ordinance of the city,

---

* SECT. 1. The city council shall have power to levy and collect taxes upon all real and personal property within the limits of the corporation, not to exceed one half of one per centum per annum upon the assessed valuation thereof, in any manner to be provided by ordinance not repugnant to the Constitution of the State of Missouri. And whenever twenty-five persons, who are taxpayers and residents of the City of La Grange, shall petition the city council, setting forth their desire to donate or subscribe to the capital stock of any railroad,

dated September 22, 1871, by which an election was authorized to be held in the city on October 4, 1871, to test the sense of the people of the city upon the question of issuing the bonds; that, in compliance with the ordinance and with the city charter, an election was held, at which the proposition was adopted by a two-thirds vote of the qualified voters; and that on September 1, 1872, the plaintiff bought the twenty-five bonds, for value, relying upon the recitals on their face, and without knowledge of any irregularity or defect in their issue: of all which the defendant had notice; by means whereof the defendant became liable and promised to pay to the plaintiff the sums specified in the coupons, according to their tenor and effect.

The answer denied all the allegations of the petition; and for further answer averred that the act of the legislature mentioned in the petition, approved March 9, 1871, attempted to give, and in terms did give, to the city authority to make gifts and donations to private manufacturing associations and corporations; that the city council, purporting to act under such authority, by an ordinance adopted September 22, 1871, (which was referred to in the answer and is copied in the margin*), did submit to a vote of the citizens a proposition to

---

or manufacturing company, or for the improvement of any road leading into the city, or for increasing the trade, travel or commerce thereof, or for securing the location and maintenance of any manufacturing company, stating the terms and conditions on which they desire such donation or subscription to be made, it shall be the duty of the city council to order an election to be held, at which the qualified voters of said city shall be allowed to vote; and if it shall appear from the returns of said election that two-thirds of the resident taxpayers have voted in favor of such donation or subscription, it shall be declared carried by proclamation of the mayor, and a special tax of not exceeding two per centum per annum may be levied on the assessed value of real and personal property to pay such donation or subscription, and the city council shall, under the hand of the mayor and attested by the seal of said city, issue bonds of the City of La Grange to the amount of the capital stock so subscribed, or to the amount of the donation made to any such enterprise, or for any purpose hereinbefore specified; which said bonds shall be conditioned upon the proposition submitted and voted upon at the election held for that purpose, and said bonds shall not bear a greater rate of interest than ten per centum per annum.

* Be it Ordained by the City Council of the City of La Grange as follows:

give or donate to the La Grange Iron and Steel Company, a private manufacturing company, formed and established for the purpose of carrying on and operating a rolling-mill, the sum of $200,000; that, in accordance with that ordinance, the bonds of the city were issued, with interest coupons attached, a part of which were those sued on; that the bonds and coupons were issued to said manufacturing company, which was a strictly private enterprise, formed and prosecuted for the purpose of private gain; and which had nothing whatever of a public character; and that it was incompetent for the legislature to grant authority to cities or towns to make donations and issue bonds to mere private companies or associations having no public functions to perform, and the act of the legislature and the ordinance of the city were void; wherefore the bonds and coupons were issued without any legal authority, and were wholly void.

To this answer the plaintiff filed a general demurrer, which was overruled by the court, and the plaintiff electing to stand by his demurrer, judgment was entered for the defendant. 19 Fed. Rep. 871. The plaintiff sued out this writ of error.

*Mr. George A. Sanders* for plaintiff in error.—The important questions in this case have been settled both in the State

---

That upon petition of John M. Glover and twenty-five other taxpayers of said city, that an election be and is hereby ordered to be held at the city hall in said city on Wednesday, the fourth day of October next, to test the sense of the legal voters of said city on the propriety of the said city donating ten acres of land, and two hundred thousand dollars in city bonds, to be due in thirty years from date, and to bear interest at the rate of eight per cent. per annum, the interest to be paid semi-annually at New York or Boston to Isaac R. Adams and associates, in consideration that the said Isaac R. Adams and associates will build and construct at the City of La Grange a rolling iron mill of sufficient capacity to roll twenty-five thousand tons of railroad iron per annum, the said mill to be built within one year from the date of the election herein ordered, and the said company shall operate and maintain the same at the City of La Grange for the term of twenty years from its completion, in accordance with the memorandum and agreement here filed of this date; and on the ballot of each voter shall be written or printed "For the donation," or "Against the donation." Adopted September 22d, 1871.

J. A. HAY, Mayor.

and Federal courts. A construction of section 14, article 11, of the Constitution of Missouri was given in *State* v. *Curators of State*, 57 Missouri, 178, in which an injunction was sought, to prohibit the issue of $75,000 of bonds by Phelps County, in aid of the School of Mines and Metallurgy, at Rolla, Missouri, and the injunction was granted because there had been no election and no assent of two-thirds of the voters, which is the all-important and only restriction in that section of the Constitution. Courts have no power to render legislative acts void, unless there is express constitutional prohibition to the enactment. In case of doubt the act must be sustained. *St. Louis* v. *Griswold*, 58 Missouri, 175 ; *Van Hostrup* v. *Madison*, 1 Wall. 291; *Richards* v. *Raymond*, 92 Ill. 612. The defendant's acts under the powers granted to it not being *ultra vires*, it is estopped from denying that power. *National Bank* v. *Matthews*, 98 U. S. 621, 629; *Hitchcock* v. *Galveston*, 96 U. S. 341; *Coloma* v. *Eaves*, 92 U. S. 484, 493. As the issue of the bonds was regular and in exact accordance with the requirements of the statute, the sole question in the case is whether the legislature had constitutional power to authorize their issue. It is claimed that this is settled adversely to plaintiff by *Loan Association* v. *Topeka*, 20 Wall. 655; but we submit that the dissenting opinion of Mr. Justice Clifford better accords with later decisions. See *County of Livingston* v. *Darlington*, 101 U. S. 407. The rule well settled now seems to be: " That courts cannot nullify an act of the State legislature on the vague ground that they think it opposed to a general spirit supposed to pervade or underlie the Constitution, where neither the terms nor the implications of the instrument disclose any such restrictions." *Walker* v. *Cincinnati*, 21 Ohio, 41. The Supreme Court of Missouri refused to decide what purposes were public and what private. The city of La Grange decided this by its vote for the issue of the bonds. The Constitution having imposed no limit, the authority of the legislature is practically absolute to give or refuse such powers to municipal organizations. *Providence Bank* v. *Billings*, 4 Pet. 514; *Calder* v. *Bull*, 3 Dall. 385 ; *Pine Grove* v. *Talcott*, 19 Wall. 666, 677. If, however, it is held that the question of a public pur-

pose is to enter into this case, then we insist that these bonds were issued for such a corporate purpose as constitutes a public purpose. A public purpose is one that promotes the general prosperity and welfare of the community. *Hackett* v. *Ottawa*, 99 U. S. 86, 94. In that case bonds issued to a manufacturing company were held good. In *Livingston* v. *Darlington*, above cited, bonds issued to aid in the erection of buildings to be given by the county to a Reform University were held good, as issued for a public corporate purpose. How do those cases differ from this? See also *Taylor* v. *Thompson*, 42 Illinois, 9; *Chicago & Iowa Railroad* v. *Pinckney*, 74 Illinois, 277, 279.

*Mr. David Wagner* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court. He recited the facts as above stated, and continued:

The general grant of legislative power in the Constitution of a State does not enable the legislature, in the exercise either of the right of eminent domain, or of the right of taxation, to take private property, without the owner's consent, for any but a public object. Nor can the legislature authorize counties, cities or towns to contract, for private objects, debts which must be paid by taxes. It cannot, therefore, authorize them to issue bonds to assist merchants or manufacturers, whether natural persons or corporations, in their private business. These limits of the legislative power are now too firmly established by judicial decisions to require extended argument upon the subject.

In *Loan Association* v. *Topeka*, 20 Wall. 655, bonds of a city, issued, as appeared on their face, pursuant to an act of the legislature of Kansas, to a manufacturing corporation, to aid it in establishing shops in the city for the manufacture of iron bridges, were held by this court to be void, even in the hands of a purchaser in good faith and for value. A like decision was made in *Parkersburg* v. *Brown*, 106 U. S. 487. The decisions in the courts of the States are to the same effect. *Allen* v. *Jay*, 60 Maine, 124; *Lowell* v. *Boston*, 111 Mass. 454; *Weismer* v. *Douglas*, 64 N. Y. 91; *In re Eureka Co.*, 96 N. Y. 42; *Bissell* v. *Kankakee*, 64 Illinois, 249; *English* v. *People*, 96 Il-

linois, 566; *Central Branch Union Pacific Railroad* v. *Smith*, 23 Kansas, 745.

We have been referred to no opposing decision. The cases of *Hackett* v. *Ottawa*, 99 U. S. 86, and *Ottawa* v. *National Bank*, 105 U. S. 342, were decided, as the Chief Justice pointed out in *Ottawa* v. *Carey*, 108 U. S. 110, 118, upon the ground that the bonds in suit appeared on their face to have been issued for municipal purposes, and were therefore valid in the hands of *bona fide* holders. In *Livingston* v. *Darlington*, 101 U. S. 407, the town subscription was towards the establishment of a State Reform School, which was undoubtedly a public purpose, and the question in controversy was whether it was a corporate purpose, within the meaning of the Constitution of Illinois. In *Burlington* v. *Beasley*, 94 U. S. 310, the grist mill held to be a work of internal improvement, to aid in constructing which a town might issue bonds under the statutes of Kansas, was a public mill which ground for toll for all customers. See *Osborne* v. *Adams County*, 106 U. S. 181, and 109 U. S. 1; *Blair* v. *Cuming County*, 111 U. S. 363. Subscriptions and bonds of towns and cities, under legislative authority, to aid in establishing railroads, have been sustained on the same ground on which the delegation to railroad corporations of the sovereign right of eminent domain has been justified, the accommodation of public travel. *Rogers* v. *Burlington*, 3 Wall. 654; *Queensbury* v. *Culver*, 19 Wall. 83; *Loan Association* v. *Topeka*, 20 Wall. 661, 662; *Taylor* v. *Ypsilanti*, 105 U. S. 60. Statutes authorizing towns and cities to pay bounties to soldiers have been upheld, because the raising of soldiers is a public duty. *Middleton* v. *Mullica*, 112 U. S. 433; *Taylor* v. *Thompson*, 42 Illinois, 9; *Hilbish* v. *Catherman*, 64 Penn. St. 154; *State* v. *Richland*, 20 Ohio St. 362; *Agawam* v. *Hampden*, 130 Mass. 528, 534.

The express provisions of the Constitution of Missouri tend to the same conclusion. It begins with a Declaration of Rights, the sixteenth article of which declares that "no private property ought to be taken or applied to public use without just compensation." This clearly presupposes that private property cannot be taken for private use. *St. Louis County Court* v.

*Griswold*, 58 Missouri, 175, 193.; 2 Kent Com. 339 note, 340. Otherwise, as it makes no provision for compensation except when the use is public, it would permit private property to be taken or appropriated for private use without any compensation whatever. It is true that this article regards the right of eminent domain, and not the power to tax; for the taking of property by taxation requires no other compensation than the taxpayer receives in being protected by the government to the support of which he contributes. But, so far as respects the use, the taking of private property by taxation is subject to the same limit as the taking by the right of eminent domain. Each is a taking by the State for the public use, and not to promote private ends.

The only other provisions of the Constitution of Missouri, having any relation to the subject, are the following sections of the eleventh article :

"SECT. 13. The credit of the State shall not be given or loaned in aid of any person, association or corporation; nor shall the State hereafter become a stockholder in any corporation or association, except for the purpose of securing loans heretofore extended to certain railroad corporations by the State.

"SECT. 14. The general assembly shall not authorize any county, city or town to become a stockholder in, or loan its credit to, any company, association or corporation, unless two thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent thereto."

Both these sections are restrictive, and not enabling. The thirteenth section peremptorily denies to the State the power of giving or lending its credit to, or becoming a stockholder in, any corporation whatever. The aim of the fourteenth section is to forbid the legislature to authorize counties, cities or towns, without the assent of the taxpayers, to become stockholders in, or to lend their credit to, any corporation, however public its object; *State* v. *Curators State University*, 57 Missouri, 178; not to permit them to be authorized, under any circumstances, to raise or spend money for private purposes.

It is averred in the answer, and admitted by the demurrer,

that the La Grange Iron and Steel Company,·.to which the bonds were issued, was "a private manufacturing company, formed and established for the purpose of carrying on and operating a rolling-mill," and "was a strictly private enterprise, formed and prosecuted for the purpose of private gain, and which had nothing whatever of a public character." The ordinance referred to shows that the mill was to manufacture railroad iron; but that is no more a public use than the manufacture of iron bridges, as in the *Topeka Case,* or the making of blocks of stone or wood for paving streets. There can be no doubt, therefore, that the act of the legislature of Missouri is unconstitutional, and that the bonds, expressed to be issued in pursuance of that act, are void upon their face.

As for this reason the action cannot be maintained, it is needless to dwell upon the point that the answer demurred to, besides the special defence of the unconstitutionality of the act, contains a general denial of the allegations in the petition. That point was mentioned and passed over in the opinion of the Circuit Court, and was not alluded to in argument here, the parties in effect assuming the general denial in the answer to have been withdrawn or waived, and the case submitted for decision upon the validity of the special defence.

*Judgment affirmed.*