### DODGE v. MISSION TP., SHAWNEE COUNTY, KAN.

(Circuit Court of Appeals, Eighth Circuit. April 11, 1901.)

#### No. 1,449.

1. LEGISLATIVE POWER TO TAX AND TO AUTHORIZE PUBLIC DEBT LIMITED TO PUBLIC PURPOSE.

   The power of a legislature to levy or to authorize the levy of a tax, and to create or authorize the creation of a public debt to be paid by taxation, is limited to its exercise for a public purpose.

2. DETERMINATION OF NATURE OF PURPOSE OF TAXATION NOT A LEGISLATIVE, BUT A JUDICIAL, FUNCTION.

   The decision of the question whether a tax or a public debt is for a public or private purpose is not a legislative, but a judicial, function. A legislature cannot make a private purpose a public purpose, or draw to itself or create the power to authorize a tax or a debt for such a purpose, by its mere fiat.

3. PROMOTION OF SUGAR MILLS NOT A PUBLIC PURPOSE.

   The promotion of the construction and operation of mills and factories to manufacture sorghum cane into sugar or syrup is a private, and not a public, purpose.

4. BONDS FOR THIS PURPOSE AND THE ACT AUTHORIZING THEM VOID.

   Township bonds issued for this purpose, and the act of March 1, 1889, authorizing their issue, are beyond the powers of the legislature and the township, and are void.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

This is an action on 359 coupons cut from 22 township bonds issued by the township of Mission, in Shawnee county, in the state of Kansas, under an act of the legislature of that state passed on March 1, 1889, and entitled "An act to encourage the erection of mills and the manufacture of sugar and syrup out of sorghum cane, and authorizing townships and cities of the second and third class to subscribe for stock in sugar factories, and to vote bonds there-

for." This act by its terms empowered any township or city named in its title to subscribe to capital stock of any incorporated company organized to erect and operate public mills or factories for the purpose of manufacturing sugar and syrup from sorghum cane upon a favorable vote of its electors, to issue its bonds to pay the subscription, and to levy taxes to pay the principal and interest of the bonds. It required every company and association which received the benefit of any bonds issued under it to retain 10 cents from the purchase price of every ton of sorghum cane which it bought for use in any mill, and to pay this sum over to the treasurer of the proper township, to be applied in payment of the bonds. It declared that all sugar mills which received aid under it were public mills, that they should manufacture sugar or syrup for customers who furnished cane, that they might charge toll therefor, that no factory should be required to receive more cane than it could manufacture into sugar or syrup, and that the amount of toll to be paid should be agreed upon between the company and the persons raising and delivering the cane prior to the time of planting the cane. Each bond contained the following recital: "This bond is one of a series of thirty bonds, of five hundred dollars each, amounting in the aggregate to the sum of fifteen thousand dollars, issued by the township of Mission, of the county of Shawnee, in the state of Kansas, for the purpose of encouraging the erection of a public sugar mill, and the manufacture of sugar and syrup from sorghum cane, in the township of Mission, Shawnee county, Kansas, pursuant to and in accordance with the provisions and requirements of an act of the legislature of the state of Kansas for the year A. D. 1889, the same being an act entitled 'An act to encourage the erection of mills and the manufacture of sugar and syrup out of sorghum cane, and authorizing townships and cities of the second and third class to subscribe for stock in sugar factories, and to vote bonds therefor,' approved March 1, A. D. 1889. And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been properly done, happened, and performed in regular and due form as required by law." Each coupon contained the statement that it represented "interest on public sugar mill bond No. ————." The plaintiff in error, W. S. Dodge, filed a complaint in this action, in which he made the necessary jurisdictional allegations and then averred that on September 15, 1890, the defendant in error, the township of Mission, issued and delivered 30 bonds, for $500 each, payable on September 15, 1910; that these bonds were registered by the auditor of the state of Kansas; that a copy of one of them was attached to the complaint; that each of the bonds had coupons upon it for the payment of interest; and that he was the owner of 359 of these coupons, which were past due and had not been paid. A demurrer was interposed to this complaint which was sustained by the court below, and thereupon a judgment was rendered in favor of the defendant, which is now presented for review by the writ of error.

Henry Keeler and D. R. Hite, for plaintiff in error.

D. M. Valentine, A. A. Godard, and H. E. Valentine, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is a fundamental principle of a republican form of government that no man shall be involuntarily deprived of his life, liberty, or property without due process of law. The prohibition of such a deprivation by the states is found in the fourteenth amendment to the constitution of the United States. But it lies deeper, and limits and conditions every grant of legislative, executive, or judicial authority. The proposition was announced in the early history of the republic, and it has been constantly affirmed. The supreme court said in Calder v. Bull, 3 Dall. 386, 388, 1 L. Ed. 648, 649:

"A law that punishes a citizen for an innocent action, or, in other words, for an act which, when done, was in violation of no existing law; a law that destroys or impairs the lawful private contracts of citizens; a law that makes a man a judge in his own cause; or a law that takes property from A. and gives it to B.,—it is against all reason and justice for a people to intrust a legislature with such powers, and therefore it cannot be presumed that they have done it."

A legislative act which takes, or undertakes to authorize the taking, of private property for a private object, either by taxation, or by the exercise of the power of eminent domain, or by any other means, is not a law, but an arbitrary decree, whereby the property of one citizen may be transferred to another. Such an act is beyond the limits of the powers granted by the people to the legislatures of the states, and is without legal force or effect. The legislative power of taxation and power of eminent domain are alike limited to the exercise thereof for public objects, and they cannot be successfully prostituted for private purposes. For the same reasons the power of a legislature to create or to authorize the creation of a public debt, and the issue of public bonds to be paid by taxation, is subject to the same limitation. The clear and forcible declarations of Chief Justice Black in 1853 in Sharpless v. Mayor, etc., of Philadelphia, 21 Pa. 147, 169, have long since become the settled law of the land. He said:

"Neither has the legislature any constitutional right to create a public debt, or to lay a tax, or to authorize any municipal corporation to do it, in order to raise funds for a mere private purpose. No such authority passed to the assembly by the general grant of legislative power. This would not be legislation. Taxation is a mode of raising revenue for public purposes. When it is prostituted to objects in no way connected with the public interests or welfare. it ceases to be taxation, and becomes plunder. Transferring money from the owners of it into the possession of those who have no title to it, though it be done under the name and form of a tax, is unconstitutional for all the reasons which forbid the legislature to usurp any other power not granted to them."

See, also, Cole v. City of La Grange, 113 U. S. 1, 6, 5 Sup. Ct. 416, 28 L. Ed. 896.

A necessary corollary to these propositions is that a legislature, which has no power to authorize the levy of a tax or the creation of a public debt for a private purpose, has no power to draw that authority to itself, or to create it by its mere declaration that a private purpose is a public one. Any other theory would destroy the limitation. A legislature cannot make a private purpose a public one by its mere fiat, and the determination of the question in any case whether or not a given object is public or private is a judicial, and is not a legislative, function. Allen v. Inhabitants of Jay, 60 Me. 124, 139, 11 Am. Rep. 185; Tyler v. Beacher, 44 Vt. 648, 651, 8 Am. Rep. 398; In re Eureka Basin Warehouse & Mfg. Co., 96 N. Y. 42, 47, 48.

If the bonds and coupons upon which this action is founded are ever paid, the money to discharge them must be raised by the levying of taxes upon private property situated in the township of Mission. Their validity, therefore, must depend upon the answer to the ques-

tion whether they were issued for, and their proceeds were applied to, a public or a private purpose. They were issued to raise money to pay a subscription made by the township to the stock of a private corporation organized to erect and operate mills to make sugar and syrup from sorghum cane, and their proceeds were applied to that purpose. The question, then, is whether or not the construction and maintenance of factories owned by private corporations to manufacture sugar and syrup from sorghum cane is a public or a private purpose. The true answer to the question seems to be plain and certain. Speaking generally, a public purpose is a governmental purpose, one of the purposes for which governments are instituted and maintained among men, such as the maintenance of order, the prevention and punishment of crime, the care of highways, the relief of the destitute, the education of youth, the erection of buildings for the use of schools and of the officers of the government; while a private object is one which is ordinarily sought and attained by individuals or private associations of individuals, such as the cultivation of the soil, the manufacture of useful and attractive articles, the purchase and sale of merchandise, and the thousand and one purposes which enlist individual enterprise and energy in a complex and advancing civilization. There seems to be no doubt in which category the promotion of the construction and maintenance of sugar factories falls.

Counsel for the plaintiff in error, however, call attention to the settled rule that the promotion of the construction of railroads and of custom gristmills operated by water is a public purpose, in aid of which municipal corporations may lawfully issue bonds, and to the opinion of the supreme court in Burlington Tp. v. Beasley, 94 U. S. 310, 24 L. Ed. 161, and insist that the aid of the construction of sugar mills is an analogous object, and therefore a public purpose. No argument is required to show that the erection of sugar mills, which directly benefit only those who own them, and which indirectly assist only those who raise sorghum cane, is no such public object as the construction of railroads, our chief means of transportation, whose rates are regulated by law, which may be used by every citizen for a reasonable compensation, and which are of universal benefit. In the case of Burlington Tp. v. Beasley, the bonds under consideration were issued to aid in the construction of a custom gristmill propelled by steam, pursuant to an act of the legislature which authorized the township to emit them for the purpose of "building bridges, free or otherwise, or to aid in the construction of railroads or water power, by donation thereto or the taking of stock thereof, or for other works of internal improvement." The bonds did not show on their face for which one of the purposes named in the act they were sent forth, but simply recited that they were issued under this law. The court held in the first place that if there was power in the township to issue the bonds under any circumstances they might be valid, and that as it was clear that such power existed to issue them for the public purpose of building bridges and constructing railroads, and there was nothing on the face of the bonds to vitiate them, they were good in the hands of innocent purchasers, and in the second place

that the construction and maintenance of a custom gristmill propelled by steam was a work of internal improvement under this statute of Kansas, for which taxes might be levied to pay these bonds.

The decision in this case is not controlling upon the issues presented in the case at bar, because the bonds before us disclose the fact that they were issued for the purpose of encouraging the construction and operation of a public sugar mill, so that there can be no bona fide purchasers without notice of the object of their issue, and because the Burlington Tp. Case illustrates, not the general rule, but an exception to the well-established rule that the aid of private manufacturing or business enterprises is not a public purpose for which taxation may be imposed. This decision is the outgrowth of a more primitive state of society, when there were no railroads and few good highways, and when custom gristmills in the immediate neighborhoods of productive fields to grind grain for bread for the people and for food for the cattle were a public necessity. In this state of affairs a line of decisions was developed to the effect that aid in the construction and maintenance of custom gristmills driven by water, and the development of the necessary water power to propel them, was a public object, for which taxes might be lawfully levied upon the property of all the citizens. Guernsey v. Burlington Tp., 4 Dill. 375, Fed. Cas. No. 5,855; Harding v. Funk, 8 Kan. 315. The Burlington Tp. Case, perhaps, advanced another step, for the decision was that the promotion of a gristmill propelled by steam, as well as one propelled by water, was a public purpose. This proposition, however, together with the entire line of decisions upon which it rests, forms an exception to the general rule upon this subject, is inapplicable to the public needs and purposes of this day, and ought not to be enlarged. This view is sustained by the decisions of the supreme court, by reason, and by the great weight of authority. The Burlington Tp. Case was decided in 1876. Six years later, in 1882, in the case of Osborne v. Adams Co., 106 U. S. 181, 1 Sup. Ct. 168, 27 L. Ed. 129, the supreme court held, under an act which authorized the issue of bonds "to aid in the construction of any railroad or other work of internal improvement," that a gristmill propelled by steam was not a work of internal improvement, and that bonds issued to aid in its construction were void. In 1883 it cited this decision with approval, and held that gristmills propelled by water were works of internal improvement under the same statute, and that bonds issued to aid in the construction of a canal to conduct the water to such mills were issued for a public purpose, and were valid. Blair v. Cuming Co., 111 U. S. 363, 372, 4 Sup. Ct. 449, 28 L. Ed. 457. These decisions show the narrow limits and sharp lines which confine this exception to the general rule.

When we turn from this line of decisions to the consideration of the nature of public aid in the construction and operation of other manufacturing plants of various kinds, the decisions of the supreme court voice no uncertain sound. In Citizens' Savings & Loan Ass'n v. City of Topeka, 20 Wall. 655, 663, 22 L. Ed. 455, the legislature of Kansas had granted to the city council of Topeka the power "to encourage the establishment of manufactories and such other enter-

prises as may tend to develop and improve such city" and the authority to issue bonds for this purpose. The court held that this grant was beyond the limitations upon the power of the legislature which grew out of the essential nature of all free governments, and that bonds issued by a city to aid and encourage a manufacturing company in establishing and operating bridge shops in Topeka were emitted for a private purpose, and were void. In City of Parkersburg v. Brown, 106 U. S. 487, 491, 1 Sup. Ct. 442, 27 L. Ed. 238, the mayor and city council of Parkersburg had been authorized by the legislature of Virginia to issue the bonds of that city for the purpose of lending them to manufacturers carrying on business in or near the municipality, and the bonds had been issued. But the supreme court held that they were not sent forth for a public purpose, and were invalid. In Cole v. City of La Grange, 113 U. S. 1, 9, 5 Sup. Ct. 416, 28 L. Ed. 896, the legislature of the state of Missouri had granted to the city of La Grange the power to subscribe for stock in any manufacturing company and to issue bonds to pay the subscription. The city had delivered its bonds to a manufacturing company established for the purpose of operating a rolling mill, but the court held that the grant was ultra vires the legislature, that the object was private, and that the bonds were void.

The sugar factory, to aid in the construction of which these bonds were issued, was not to be constructed or operated by the township or its officers, but by private owners. The officers of the township were to have no control or direction of its management. It was not to be erected to perform, or to assist in the performance of, any function of government. All prosperous mercantile and manufacturing enterprises in a town tend to enhance the value of property, to employ labor, and to increase business. The fact that the construction and operation of this mill would have a similar effect in no way differentiates the purpose or object of its promotion from that of the promotion of other private business undertakings. If this attempt to promote the manufacture of sugar by taxation is to be sustained, every holder of property in this township must contribute a portion of that property to pay for the erection and operation of this mill. For what purpose must he make this contribution? Not to sustain the government, but to build a mill for private owners, in which they may conduct their own private business. Who receives the proceeds of these bonds? Or, in other words, to whom does the taxpayer really pay his tax? Not to the salaried officers of the government, not to the teachers of the children in the public schools, but to the private individuals who own the mills. For whose benefit does he contribute this share of his property? For the direct benefit of the owners of the mill alone, and perhaps for the indirect benefit of those farmers who contract with these owners before they plant their cane for its manufacture into sugar or syrup. When these facts are studiously considered, all doubt of the character of this promotion vanishes. The aid of the construction and operation of this mill actually serves but two purposes. It serves to enable the owners of the mill to gain the legitimate profits of their undertaking, and it serves to take by taxation from the owners of property in

the township a portion of that property and to give it to the owners of the mill or to the promoters of the scheme for their private use. Neither of these objects is a public purpose. Neither of them is a purpose for which taxes can be lawfully levied, or for which municipal bonds may be legally issued. Our conclusion is that the promotion of the construction and operation of a mill for the manufacture of sorghum cane into sugar and syrup is not a public purpose. Township bonds issued for that purpose, and the act of the legislature which authorizes their issue, are alike beyond the powers of the legislature and of the township, and are void. Sharpless v. Mayor, etc., of Philadelphia, 21 Pa. 147, 169; Citizens' Savings & Loan Ass'n v. City of Topeka, 20 Wall. 655, 661; City of Parkersburg v. Brown, 106 U. S. 487, 500, 1 Sup. Ct. 442, 27 L. Ed. 238; Osborne v. Adams Co., 106 U. S. 181, 1 Sup. Ct. 168, 27 L. Ed. 129; Cole v. City of La Grange, 113 U. S. 1, 7, 5 Sup. Ct. 416, 28 L. Ed. 896; Allen v. Inhabitants of Jay, 60 Me. 124, 128, 11 Am. Rep. 185; Mead v. Inhabitants of Acton, 139 Mass. 341, 1 N. E. 413; Michigan Sugar Co. v. Auditor General (Mich.) 83 N. W. 625, 627; U. S. v. Carlisle, 5 App. D. C. 138, 146, 161; Deal v. Mississippi Co., 107 Mo. 464, 468, 18 S. W. 24; Kingman v. City of Brockton, 153 Mass. 255, 26 N. E. 998; People v. Parks, 58 Cal. 624, 643; Attorney General v. City of Eau Claire, 37 Wis. 400; State v. Osawkee Tp., 14 Kan. 418, 420, 19 Am. Rep. 99; City of Geneseo v. Geneseo Natural Gas, Coal, Oil, Salt & Mineral Co., 55 Kan. 358, 361; In re Eureka Basin Warehouse & Mfg. Co., 96 N. Y. 42, 47, 48; Coates v. Campbell, 37 Minn. 498, 499, 35 N. W. 366.

The argument of counsel for the plaintiff in error that the promotion of the construction and operation of this mill is a public purpose, because the legislature declared in the act authorizing the issue of the bonds that the mills aided thereby were public mills, and because the supreme court in Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, Budd v. People, 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247, and Brass v. Stoeser, 153 U. S. 391, 14 Sup. Ct. 857, 38 L. Ed. 757, held that the business of receiving and storing grain for compensation in elevators, warehouses, and docks might be declared by the legislatures of the states to be of a public character, and might be regulated under their police power, has not been overlooked. But that contention cannot prevail, because the object of the promotion of this mill and of its operation was clearly private, and a legislature cannot by its mere fiat make a private object a public one for the purpose of taxation, and also because the limits of the power to tax are by no means the same as the limits of the police power of the states. Many private occupations, as the sale of intoxicants, the driving of carriages for hire, and the construction of private buildings along the streets of a city, bear such a relation to the public welfare that they may be regulated under the police power of a state, when there is an entire absence of power in its legislature to tax the property of its citizens to promote or maintain these enterprises. The judgment below is affirmed.