No. 89.—In the matter of JOHN J. R. FLOURNOY, Esq., Attorney-General. On error from Washington.

So far as the public is interested in a fine imposed, the Executive remission has the effect to restore it to the individual fined, although it had been paid over to the attorney or solicitor-general, and by him to the county treasurer, before the Executive pardon was granted.

A fine thus remitted, being in the hands of the attorney-general, or other officer of court, unappropriated in the manner prescribed by law, will be refunded under an order of the court, by rule against such officer.

The questions involved in this case were adjudicated in the court below, before Judge Gamble, at September Term, 1846.

For the facts of the case, and the error assigned, see the decision of the Supreme Court.

CHARLES J. JENKINS, for the Attorney-General, relied upon the following points :

1st. It was competent for the attorney-general to receive the note of Edmund Swint in payment of the fine; and that he did so receive it, is evinced by the discharge of the prisoners.

2d. The 4th section of the 14th division of the penal code appropriates moneys received for fines inflicted by the superior courts, to the payment of costs due in criminal cases, in which no individual is made liable therefor, or the person so liable is unable to pay such costs.

3d. The fine in this case was evidently so appropriated, the attorney-general having received the note of a third person, and the prisoner thereupon having been discharged.

4th. The pardoning power cannot be exercised to divest a vested interest.

5th. The Executive pardon cannot be exercised after the sentence of the law has been fully executed.

And cited the following authorities :—2 *Bay's R.* 565; 1 *Nott and McC. R.* 26; 4 *Washington C. C. R.* 64; 10 *Wheaton's R.* 246.

C. O. McCONNELL, for the defendant in error, insisted :

1st. That the decision of the Superior Court was according to law.

2d. The judge of the Superior Court was compelled to obey the order of the Governor, who had the right to remit the fine imposed on the defendant, by the power vested in him by the Constitution of this State—Art. 2, sec. 7.

3d. The judge had power to order the credit to be made upon the note given to the attorney-general for the payment of the fine assessed by the court; for the court has control over its own officers.—*Starr and Rice* vs. *Vanderheyden,* 9 *Johns. R.* 253; *Ex parte Prankard,* 3 *B. and A.* 257 (S. C.); *Ex parte Fisher;* 1 *Chitty R.* 694; 2 *Petersdorf,* 513; 6 *Taun.* 105.

The attorney-general could not legally enter into a contract with a private individual to pay a fine in this manner.—*14th Division Penal Code,* sec. 24. Consequently it would be a matter over which the judge had a right to exercise summary jurisdiction.

4th. If the act of the attorney-general be a legal act, and binding, it would take away the power of the Governor to remit any part of a sentence, vested in him by the Constitution.

In the Matter of Flournoy, Attorney-General.

*By the Court*—NISBET, Judge.

Two men, by the name of Croam, were tried before the Superior Court of Washington County, and convicted of a riot.

The court fined them twenty-five dollars each, and committed them to the custody of the sheriff until it was paid. The costs of the prosecution were paid in cash, and a note, made by a third person to the Attorney-General, for fifty dollars, was received by him in payment of the fine, and the criminals were discharged. Subsequently, the Governor remitted the fine of one of them, and a rule was taken calling upon the Attorney-General to show cause why he should not credit the note with the twenty-five dollars thus remitted. He showed for cause, the execution of the note as stated, and the discharge of the criminal, and that the Executive order, being directed to the sheriff, and the prisoner having been discharged, there was nothing upon which it could operate. Upon hearing this rule, the presiding judge determined that the Governor had the power to remit the fine, and that the Attorney-General credit the note with the amount remitted, to wit, twenty-five dollars; and farther, that if the money had been paid over to the county, it would be compelled to return it to the defendant.

To these decisions the Attorney-General excepts.

We do not question the power of the Executive to remit fines, for it is expressly conferred in the Constitution of the State.—*Prin.* 908. The question here is, as to the effect of the remission, under the circumstances of this case.

It is claimed by the counsel for the plaintiff in error, that the pardoning power cannot be exerted, after the sentence of the law has been fully executed. This position seems to be sound as to cases where the sentence is in the form of a personal punishment, as confinement in the penitentiary. In that case, so far as the pardon affects the sentence, after it has been fully endured, it would be absurd to ask, and ridiculous to grant it. If granted, it might subserve the end of some restitution of character, but so far as the punishment is concerned, it would be *brutum fulmen.* Such a thing as a pardon after sentence of punishment executed, I have not known. At first view, the same absurdity attaches to the idea of remitting a fine, or forfeiture, after the one has been paid, and the other taken effect. The cases are very different.

The effect of a pardon is, to restore the citizen to the condition in which he was before conviction; it proceeds upon the idea of innocence. The power is given to the Executive to relieve against the possible contingency, under all systems of laws, of a wrongful conviction. And as all good governments are founded upon essential equity, the sovereign authority will not permit, so far as it can be prevented consistently with the maintenance of general laws, injustice to be done.

The remission of a fine reinstates the citizen in that condition as to the offence, and the consequences of conviction, which he occupied before conviction, and it is practicable, in case of fines and forfeitures, to do this after the sentence is fully executed. That is, it is practicable to return to him a fine after it has been paid. This we lay down as the general rule; we mean to say that the effect of the Executive order

remitting a fine, is to entitle the citizen to a restitution of it. This proposition, however, we believe, is subject to this limitation, to wit: the remission of a fine or forfeiture, cannot divest an interest in either, which, by law, has vested in an individual or corporation, or any body of citizens, constitutionally. So far as the public is interested in a fine, the Executive remission has the effect to restore it; but so far as the citizens have a vested right in it, it is beyond the power of the Governor. There is no such limitation to the pardoning power, in our State Constitution. In other State constitutions, as in South Carolina, this limitation is found. We think, however, that although not found here, it exists.

By the Constitution of the United States, the States are prohibited from passing any law, impairing the obligation of contracts. This inhibition has, by repeated adjudications of the Supreme Court, been held to extend to contracts made by operation of law, between a State and a citizen. If the State, by an act of the Legislature, has appropriated a fine, or any part of it, to a citizen, she has made with him a contract, by virtue of which a right to the fine vests, and she cannot impair the obligation of that contract. She cannot revoke the vested right, neither by an act of legislation, nor by a power delegated, under her constitution, to the Executive. So long as the government exists under its present organization, the State Constitutions must be subordinate to the Federal Constitution. The inhibition extends to fundamental law, as well as to ordinary legislation.

It is a curious fact, that the Constitution of the Union is silent as to the power of Congress to impair contracts. Notwithstanding, it is not to be presumed, for a moment, that the courts would enforce a law of Congress, which would divest the right of the citizen to his property, except for the public use, upon adequate compensation being provided.

So sacred are these vested rights held—so deeply laid in the primary elements of government—so essential to social order, and so indispensable to freedom—that they seem to occupy a place in the estimation of civilized states, anterior to, and above, constitutions and laws.

The Supreme Court of the United States, in *Wilkinson* vs. *Leland et al.*, reported in 2 *Peters*, 657, through Mr. Story, upon this subject, speak as follows:

" That government can scarcely be deemed to be free, where the rights of property are left solely dependent upon the will of a legislative body, without any restraint. The fundamental maxims of free government seem to require, that the rights of personal security and private property should be held sacred. At least no court of justice in this country would be warranted in assuming, that the power to violate and disregard them—a power so repugnant to the common principles of justice and civil liberty—lurked under any general grant of legislative authority, or ought to be implied from any general expression of the will of the people."

In *Terret et al.* vs. *Taylor et al.*, 9 *Cranch*, 43, it was held by the Supreme Court, that a title made by the Legislature to any corporation or person, is irrevocable, and that a different doctrine is inconsistent with the great and fundamental principles of a republican government. In the case first named above, the court farther say :. " We know of no case in which

a legislative act to transfer the property of A to B, without his consent, has ever been held a constitutional exercise of legislative power, in any State in the Union."

The principles decided in these cases, apply to the case before us : the great principle settled is, that a right vested cannot be revoked. This is indeed a common-law doctrine. In England, a limited monarchy, and without a written constitution, the crown cannot recall a right vested. The king has the power to remit a forfeiture, but that power cannot revoke a moiety of the forfeiture, which by law is given to a subject.—*The King* vs. *Amery*, 2 *Durnf. and East*, 569.

This question has been considered in our sister State of South Carolina more than once.—See 1 *Nott and McCord*, 26 ; 2 *Bay*, 565. The former of these cases involved, with remarkable identity of facts, all the points made in this case. There was a conviction for retailing spirituous liquors without license ; a fine, and a rule against the sheriff to show cause why he had not collected the money.

He showed for cause, that the Governor had remitted the fine. One half the penalty by law went to the informer, and the other half to the commissioners of the district, for the repairs of roads and bridges. The Court of Appeals ruled, that the effect of the remission, so far as concerned the commissioners' moiety, was to arrest the collection of the fine ; and so far as concerned the moiety going to the informer, his right to that had vested and could not be divested. Another point was settled, in the Carolina case, to wit : that the commissioners acquire no rights in the fund, but are to be considered as agents of the State. We shall see that a similar question occurs in this case. So, also, the Secretary of the Treasury, authorized by Congress to remit, in certain cases, the condemnation of goods seized and libeled, for violation of the revenue laws, has been held by the Supreme Court empowered to remit only one moiety, to wit, that which goes to the government, the other moiety, which is by law given to the collector and other officers of the custom-house, he cannot remit.—10 *Wheat.* 246. See also, 4 *Washington's C. C.* 447.

In this case, the money raised by the sentence, or rather its equivalent, a promissory note, received by the Attorney-General in lieu of the money, had never passed from his hands ; he is an officer of the court. The fund was therefore within reach of the court. It could lay its hand upon it and return it to the defendant. It had, in this summary way, the right to determine the questions made by the record.

Now, let us inquire what disposition the law makes of fines, and see whether the fund in question belonged to the State, or whether it, or any part of it, belonged to, and had vested in, the Attorney-General. According to the principles announced, that part of it, if any, which is by law due to the public, is remitted, and that part which by law, if any, vests in a citizen, is not remitted.

The money raised by fines, is by law applied first to the payment of the costs which accrue upon indictments which are ignored by the grand jury ; upon criminal trials which result in acquittal, and which are due upon convictions, when the defendant is insolvent.—(See 4 sect. of the 14th division of the penal code.) At the end of each term, the officers of court, the Attorney-General included, are required to make out and

39

present their account for such costs, and an order is passed that they be paid, out of a fund thus made up of fines and forfeitures.

Whatever balance of that fund may remain, after paying these accounts, is directed by the law, to be paid over to the county treasurer, to be applied to county purposes, that is, to roads, bridges, &c.

It is claimed, that by operation of these provisions of law, the fine remitted in this case, vested first in the officers of court, and secondly in the Inferior Court for county purposes.

The *costs* referred to, are chargeable upon an aggregate fund, constituted of fines and forfeitures generally. This record does not show that any such costs were in arrear to the Attorney-General, or any other officer of court; that there had been any order passed directing any such costs to be paid. There was no appropriation of this specific sum or note. It was in the hands of the collecting officer, for the payment over of which he was liable. No right to this, or any specific sum, therefore, vested in him. We are cognizant of the case the record makes, and no other.

If it is, as we believe, a fund which goes to the Inferior Court for county purposes, then does it belong to the State, and the Inferior Court are only the agents of the State to disburse it, for the common benefit. Just as the commissioners, in the case in South Carolina, were held to be public agents. And inasmuch as there were no vested rights in individuals, and as the Executive remission revokes a fine due, or paid to, the State, we do not find any error in the record, and confirm the judgment of the court below.