IN THE MATTER OF THE APPEAL OF J. A. CUMMINS FROM A RULING OF THE AUDITOR OF THE TERRITORY OF HAWAII.

ARGUED MAY 26 AND JUNE 2, 1911.                    DECIDED JUNE 15, 1911.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

CONSTITUTIONAL LAW—*invalidity of statute as a defense by ministerial officer.*

The auditor of this Territory may invoke the invalidity of a statute in defense of his action in refusing to allow a claim.

TERRITORIES—*limitations on legislative power of.*

An appropriation of money by the legislature to refund the amount of a fine paid pursuant to a judgment of a court of competent jurisdiction upon the assumption that the accused was innocent is an illegal attempt to exercise judicial functions. (Per Robertson, C.J.)

SAME—*use of public funds for private purposes.*

It is beyond the power of the legislature to authorize the expenditure of money raised by taxation by way of gift or gratuity to individuals in the absence of, at least, a moral obligation to support the appropriation. (Per Robertson, C.J.)

In re Cummins, 20 Haw. 518.

SAME—*existence of moral obligation to justify expenditure ultimately a question of law.*

The courts are not always concluded by a legislative opinion or finding that a moral obligation existed to support an appropriation of public money for a private purpose. (Per Robertson, C.J.)

SAME—*rightful subject of legislation.*

Act 144 of the Session Laws of 1911, held to constitute an invasion of the judicial power, and an illegal attempt to divert public funds to private use, and hence, not a rightful subject of legislation within the meaning of section 55 of the Organic Act. (Per Robertson, C.J.)

PARDON—*power in governor, not in legislature.*

The power of pardon is by section 66 of the Organic Act vested in the governor exclusively and can not lawfully be exercised by the legislature. Under this power the governor may grant pardons which are partial in their operation as well as those which are full and absolute. The legislature may not remit a fine judicically imposed. (Per Perry, J.).

ID.—*statute remitting fine invalid.*

An appropriation was made by the legislature of a sum of money "for the purpose of refunding" to a person duly convicted and sentenced by a judicial tribunal "the fine" imposed under the sentence and paid by the accused. As to the fine the executive had refused or at least failed to grant a pardon. The appropriation was not within the legislative power and is invalid. (Per Perry, J.)

This is an appeal from a ruling made by the territorial auditor by which he refused to issue a warrant upon the treasurer on the claim of John A. Cummins for the sum of five thousand dollars. This sum, the appellant claims is due and payable to him pursuant to Act 144 of the Session Laws of 1911, which is here set forth in full.

"An Act for the Relief of John A. Cummins.

"Whereas, it appears that John A. Cummins, a descendant of one of the High Chief families of Hawaii, and a man who has occupied honorable positions under the late Hawaiian Monarchy, was arrested on the 16th day of January, A. D. 1895, and charged before a Military Commission with the crime of Treason; and

"Whereas, it further appears that owing to inadvertence

and a non-comprehension of the gravity of the plea, he plead guilty to the said charge of Treason; and,

"Whereas, the seven judges presiding at the Military Commission before which he was charged, although recognizing the fact that he was not guilty of the crime of Treason, were powerless under the law to do other than impose a sentence of 'five years hard labor and a monetary fine of Five Thousand Dollars;' and

"Whereas, the reviewing authorities, acting on the recommendation of the said Military Commission, did mitigate and modify the said sentence by striking out the 'five years hard labor,' but retaining the said monetary fine of Five Thousand Dollars, which sum the said John A. Cummins was compelled to borrow at a high rate of interest in order to pay the said fine and thereby obtain his liberty; now, therefore,

"*Be it Enacted by the Legislature of the Territory of Hawaii:*

"Section 1. The sum of Five Thousand Dollars ($5,000.00) is hereby appropriated to be paid out of any moneys in the Treasury of the Territory of Hawaii not otherwise appropriated, for the purpose of refunding to said John A. Cummins the fine hereinabove set forth.

"Section 2. This Act shall take effect from and after the date of its approval.

"The Senate of the Territory of Hawaii,

"Honolulu, T. H., April 25, 1911.

"We hereby certify that the foregoing Bill, after reconsideration on the veto of the Governor, was, upon a vote taken by Ayes and Noes, approved by a two-thirds vote of all of the elective members of the Senate of the Territory of Hawaii, this day.

"Eric A. Knudsen,
                    "President of the Senate.
"John H. Wise,
                    "Clerk of the Senate.

"The House of Representatives of the Territory of Hawaii,

"Honolulu, T. H., April 26, 1911.

"We hereby certify that the foregoing Bill, after reconsideration on the veto of the Governor, was, upon a vote taken by Ayes and Noes, approved by a two-thirds vote of all of the

elective members of the House of Representatives of the Territory of Hawaii, this day.

> "H. L. Holstein,
> "Speaker, House of Representatives.
> "Edward Woodward,
> "Clerk, House of Representatives."

The appellant is one of those persons who were prosecuted before a military commission in 1895 for complicity in the attempt which was made in January of that year to subvert the then existing government of these Islands and to restore the monarchy. Upon his plea of guilty to a charge of treason the appellant was sentenced to a term of five years at hard labor and to pay a fine of five thousand dollars. The sentence was modified by President Dole of the Republic of Hawaii, as commander-in-chief of the military forces, by eliminating the term of imprisonment. The fine of five thousand dollars was then paid. Thereafter, on or about the 18th day of July 1898, President Dole granted the appellant, as well as many others who had been convicted before the military commission, a full and free pardon and restoration to his civil rights.

In refusing the appellant's demand the auditor stated that he was advised and believed that the act in question was unconstitutional and void "because, among other reasons, it authorizes the use of public moneys for private purposes."

In his message to the legislature vetoing the bill, on April 24, 1911, the governor said, "The object of this bill is to pay to John A. Cummins the amount of a fine of $5,000 which he paid sixteen years ago under a sentence based on a plea of guilty.

"There is much in this case to appeal to sentiment and sympathy, and for that reason it is both difficult and unpleasant to consider the bill upon its merits. It is unfortunate that this matter, recalling, as it does, the circumstances out of which this case arose, should be reopened. Looking at the matter from the standpoint of broad policy, the repayment of the fine in question would tend to serve as an embarrassing precedent

in other cases that might appeal to sentiment, and especially in the other cases which arose out of the same circumstances. Mr. Cummins was the only one out of about one hundred and ninety who escaped imprisonment by paying a fine. A recognition of this claim might well be regarded as a recognition of the claims of the others, and there would be as much logic in compensating the others for their several periods of imprisonment as in compensating him for the fine which he paid.

"Be that as it may, there seems to be an insuperable legal objection to this bill. The fine when paid became public money. That particular money was expended long ago by the Republic of Hawaii, but, whether it was or not and even if it had been paid to the Territory of Hawaii, its payment to a private individual, or the payment of a like sum out of other public moneys, would come within the constitutional inhibition against the use of public moneys for private purposes. A bill of this kind is not an exercise of the pardoning power, for that is vested solely in the executive, and even the executive could not exercise that power in such a way as to remit a fine already paid under a legal judgment. This case is not one of those in which a legislative body may authorize the repayment of moneys under a mistake of fact or even moneys paid under a mistake of law. In such cases the question is merely one of policy. The money is the peoples', for the peoples', that is, for public purposes and cannot lawfully be diverted to private purposes."

ROBERTSON, C.J.  The first point to be considered is that raised by the appellant to the effect that the auditor, having no personal interest in the money involved in this case, may not raise the question as to the validity of the statute because "the court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect and who, therefore, has no interest in defeating it." The principle referred to has been applied by this court in several cases. In the case at bar no constitutional question, strictly speaking, is raised. The contention of the attorney general is that the

statute is not a "rightful subject of legislation" within the terms of the grant of legislative power contained in section 55 of the Organic Act.

Assuming, however, that there is sufficient analogy to warrant the application of the principle the contention will be considered on the basis upon which it is founded.

The question whether a public officer may set up the unconstitutionality of a statute in defense of his refusal to perform an alleged ministerial duty has frequently arisen in mandamus proceedings, and, as pointed out in 19 Am. & Eng. Enc. Law (2nd ed), 764, the cases are in irreconcilable conflict. In *Smith* v. *Indiana*, 191 U. S. 138, 148, the court said, "We have no doubt of the power of the state courts to assume jurisdiction of the case if they choose to do so, although there are many authorities to the effect that a ministerial officer, charged by law with the duty of enforcing a certain statute, cannot refuse to perform his plain duty thereunder upon the ground that in his opinion it is repugnant to the Constitution. It is but just to say, however, that the power of a public officer to question the constitutionality of a statute as an excuse for refusing to enforce it has often been assumed, and sometimes directly decided, to exist. In any event it is a purely local question, and seems to have been so treated by this court in *Huntington* v. *Worthen*, 120 U. S. 97, 101." The cases *pro* and *con* are not in accord among themselves in their reasoning. Perhaps a strict rule to apply to all cases should not be laid down as much depends upon circumstances. The attorney general argues that express authority to refuse to audit a claim such as that here in question is given to the auditor by the clause in section 1514 of the Revised Laws, which provides that "he shall have the power by withholding his approval when necessary, to prevent the misappropriation of public funds, as well as the disbursement of public moneys in excess of specific appropriations." But the term "misappropriation" as there used evidently has reference to the use of public moneys for purposes other than those

for which they have been specifically appropriated, or assigned, by an act of the legislature. The question here is whether the auditor may refuse to audit, or issue a warrant for, a claim for which there is, concededly, a specific appropriation, on the ground that the appropriation is, itself, void. The answer is to be found in general considerations rather than in any specific provision of the statute. By virtue of his position the auditor of the Territory is the public guardian of the expenditure of the people's money. In so far as that money has been legally assigned by the legislature for application to public purposes it is the auditor's duty to scrutinize the vouchers presented for payment out of designated appropriations, and to satisfy himself as to the correctness of claims made against the public funds. As such guardian, the people would doubtless expect the auditor to refuse to allow a claim presented to him under an appropriation which he had good reason to believe was made by the legislature without authority. Knowledge on his part that the governor had vetoed an appropriation because it was believed to be illegal would be a good reason. An attempted illegal disposition of public funds by the legislature would be something that every tax-payer in the Territory would have the right to complain of. But why should an individual tax-payer, who may not be in a position to know whether a claim will be made for the money, or whether, if made, the auditor intends to allow it, be expected to go to the trouble and expense of instituting what might be distasteful legal proceedings to protect the public treasury, when there is a public guardian who is in a position to know the facts, and who has at his disposal the services of the law officer of the government? Under such circumstances the auditor should by virtue of his position be held to have the authority to invoke the constitutional question in defense of his action. It has not been contended that the auditor has any personal interest in having this statute declared invalid. But this proceeding is, in effect, one against the auditor in his official capacity, and it cannot truly be said

that in that capacity he has no interest in the question involved. And so it has been held that an auditing officer not only has that authority, but that it is his duty, to refuse to allow a claim made under a statute which he conceives to be invalid, and to assert such invalidity in defense of proceedings brought against him to enforce the allowance of the claim. *State Auditor* v. *Board of Managers,* 93 Ky. 537; *State* v. *Hallock,* 16 Nev. 373; *Denman* v. *Broderick,* 111 Cal. 96; *Com.* v. *Mathues,* 210 Pa. St. 372; *McDermont* v. *Dinnie,* 6 N. Dak. 278; *Van Horn* v. *State,* 46 Neb. 62; *State* v. *Blumberg,* 46 Wash. 270; *Guthrie Daily Leader* v. *Cameron,* 3 Okl. 677. A pertinent suggestion is contained in the note to *State* v. *Heard,* 47 L. R. A. 512, 519, where, after referring to the conflict of authority on the subject, it is said, "There is running through the decisions, however, a thread which would furnish a logical and satisfactory rule upon the question if finally adopted. That is that statutes are generally presumed valid, and ministerial officers must treat them as such until their invalidity is established, but that if the nature of the office is such as to require the officer to raise the question, or if his personal interest is such as to entitle him to do so, he may contest the validity of the statute in a mandamus proceeding to enforce it. In other cases he must perform his duty as the statute requires, and leave those whose rights are affected by it to take steps to annul it."

The principle involved is applicable here although this is a summary appeal under the statute (R. L. Sec. 1535). The respective positions of the parties are the same as they would have been in a petition for a writ of mandamus.

The principal question which is presented for decision is whether Act 144 is a valid enactment. The arguments on this question have taken a wide range, but it will not be necessary to discuss all the points in detail. My conclusion that the statute is invalid rests upon certain broad principles the application of which should, I think, be obvious.

The legislative power was conferred by Congress upon the

legislature of this Territory in broad and liberal terms. *In re Craig,* ante pp. 483, 490. But that power, in its exercise, is subject, nevertheless, to the fundamental doctrine of American law regarding the independence of the three great branches of government. *McCandless* v. *Campbell,* ante pp. 411, 417. Not only shall the legislature not delegate its functions to either of the other branches, but it may not usurp the functions of either of those two branches. The judiciary, whenever necessary, must protect itself against legislative inroads upon its sphere of action. The guilt or innocence of the appellant of the offense with which he was charged in 1895 was a question of law, the determination of which involved the exercise of the judicial power. The validity of the judgments of the military commission was sustained by this court in *In re Kalanianaole,* 10 Haw 29. The judgment of that tribunal in the case of the appellant was, therefore, conclusive and binding on the legislative and executive departments of the government. The executive could, as it did, exercise its power to pardon, but the exertion of that power, though effectual to completely wipe out the stigma of the conviction, was ineffectual to invalidate the judgment, or to refund the amount of the fine which had been paid in compliance with the judgment. *Knote* v. *United States,* 95 U. S. 149; *Cook* v. *Freeholders of Middlesex,* 26 N. J. L. 326; 27 N. J. L. 637.

As the fine so paid pursuant to the judgment of the military commission was beyond the reach of the pardoning power of the executive, so also was it beyond that of the legislative power. *Roberts* v. *State,* 51 N. Y. S. 691; *Allen* v. *Board of Auditors,* 122 Mich. 324; *State* v. *Railroad,* 71 Conn. 43, 49; *Haley* v. *Clark,* 26 Ala. 439.

In the Connecticut case, above cited, the court said, "The separation of the powers of government into three departments, each of which within its own sphere is supreme, is a constitutional principle which cannot be overturned. The judgment is the final and supreme act of judicial power. The legislature

cannot overturn judgments any more than the judiciary can make laws. A judgment is based upon established rules and principles administered by the judiciary."

The appropriation of a sum of money by the legislature for the avowed purpose of refunding the amount of a fine paid pursuant to a judgment of a court of competent jurisdiction upon the assumption that the accused was innocent and the judgment erroneous is, clearly, an attempt to repudiate, overturn, and set aside that judgment. If such a thing can be done in one case, it could, of course, be done in all similar cases, thereby establishing the anomalous and untenable situation of the legislature being called upon from time to time to review, revise and upset the verdicts of juries and the findings and judgments of courts.

In *Roberts* v. *State,* it appeared that one John Roberts had been convicted in New York of the crime of burglary; that after serving nearly two years in the state prison he was pardoned by the governor; that thereafter the state legislature passed an act authorizing Roberts "to present a claim to the board of claims for damages sustained by him by reason of his improper conviction and imprisonment;" that a claim was presented, and the board made an award in the claimant's favor in the sum of $7500. On appeal, the supreme court set aside the award. The court said, "But why was the conviction of the plaintiff improper? He was found guilty by the court of oyer and terminer of the crime of burglary. The conviction was not improper if he was in fact guilty. It could only have been held improper if, although found guilty, he was in fact innocent. If the act in question shall be deemed a legislative determination that his conviction was improper, the legislature, in its enactment, was compelled to practically annul a judgment duly rendered in the oyer and terminer in 1877. That judgment determined that the plaintiff was guilty. The legislature, by the act in question, in enacting that his conviction was improper, necessarily found that he was innocent. In doing so

it was compelled to pass upon a question of fact, to invalidate. an unreversed judgment fairly obtained, and thus to exercise judicial functions" (p. 694). Also, "For the reasons above stated, and without considering other questions raised in the points submitted to us, we are of the opinion that the judgment rendered in this case cannot be sustained. It would be a matter of regret if we were compelled to hold that the enactment of chapter 342 of the Laws of 1895 was a proper exercise of legislative power. The doctrine has ever been maintained by our courts that a judgment obtained without fraud or duress, either in a civil or criminal court, is a final determination of the rights of the parties, and of the questions necessarily passed upon in its rendition. That the doctrine should be maintained is of the utmost importance. If the act under consideration can be sustained, we see no reason to doubt that, in any case where a criminal has been convicted of crime and imprisoned, the legislature, on his being pardoned, or on the expiration of his term of imprisonment, may retry the question of his guilt or innocence, or authorize a tribunal of its own selection to do so, and may thereupon sanction an allowance of a claim for damages against the state. The effect of holding that the legislature possesses this power would, be deplorable. Judgments in criminal cases would only be final, effectual, and valid at the will of the legislature" (p. 696).

The principle would be precisely the same whether the sentence imposed was one of imprisonment or a monetary fine, and whether the attempted compensation should take the form of an act allowing a claim for damages to be made in some tribunal, or of a direct vote of money by the legislature.

The foregoing observations have an important bearing upon the contention made on behalf of the auditor by the attorney general to the effect that the statute in question constitutes an illegal attempt on the part of the legislature to devote public moneys to a purely private purpose—in other words, to make a gift of public funds to a private individual.

It is fundamental that the legislature has no power to levy taxes except for public purposes, and that the question what constitutes a public purpose is, in the last analysis, a question of law. Cooley on Taxation (2nd ed.) 55, 103; *Loan Association* v. *Topeka,* 20 Wall. 655, 664; *Lowell* v. *Boston,* 111 Mass. 454; *Bush* v. *Supervisors,* 159 N. Y. 212; *Perkins* v. *Milford,* 59 Me. 315; *State* v. *Osawkee Tp.,* 14 Kan. 322; *Board of Education* v. *State,* 51 Oh. St. 531; *Brodhead* v. *Milwaukee,* 19 Wis. 659; *Dodge* v. *Mission Tp.,* 107 Fed. 827. Also, that it is beyond the power of the legislature to authorize the expenditure of money raised by taxation by way of gift or gratuity to individuals in the absence of, at least, a moral obligation to support the appropriation. *Michigan Sugar Co.* v. *Auditor General,* 124 Mich. 674; *Mead* v. *Acton,* 139 Mass. 341; *Lucas County* v. *State,* 75 Oh. St. 114; *State* v. *Froehlich,* 118 Wis. 129; *Castner* v. *Minneapolis,* 92 Minn. 84; *N. Y. Life Ins. Co.* v. *Commissioners,* 106 Fed. 123; *Parkersburg* v. *Brown,* 106 U. S. 487; *In re The Queen's Hospital,* 15 Haw. 663.

In *N. Y. Life Ins. Co.* v. *Commissioners,* the circuit court of appeals said, referring to certain Ohio cases, "We think those last two cases do not sanction the conclusion that the court may sit in review of the legislative discretion, and itself determine the measure or degree of merit which a claim must have to entitle it to favorable consideration at the hands of the legislature. But they do decide that, if the facts upon which the legislature has acted are denied, the court may inquire whether they did in truth exist, and if it clearly appears that the purpose of the act was a private one, and so beyond the pale of legislation, the court will not regard itself as concluded, but will adjudge the act void" (p. 132). Also, that, "It may be conceded that if the legislature, departing from its functions, should, under the guise of legislation, devote public funds to be collected by taxation for an object in no sense public, the judiciary has the authority to interfere and declare such action to be outside of the legislative power, and therefore void, as

amounting to confiscation. But the rule in such cases is that. the violation of the restrictions must be clear and indubitable before such interference is authorized" (p. 133).

"While an enactment is conclusive as to facts it states against those who are within its operation, though not as to such as are not within its enacting part, a mere recital in a statute, either of fact or law, is not conclusive. A court is at liberty to decide the law differently, and to inquire independently as to the truth of the recited facts." Sutherland, Statutory Construction, Sec. 213.

In the case at bar the surrounding facts and circumstances are undisputed. After indulging every possible presumption in favor of the validity of the action of the legislature, the facts remain that the fine paid by the appellant went into the public treasury many years ago; and that the judgment, in satisfaction of which the fine was paid, being valid and binding, was and is conclusive on all branches of the government, and no one of those branches can now say aught to the contrary. Under these circumstances it cannot be contended successfully that there is any possible moral obligation owing by the public to the appellant in satisfaction of which public moneys may lawfully be appropriated and paid over to him. The legislature cannot, by thus trespassing upon the judicial power and unearthing controversies which have been set at rest by the courts, uncover supposed moral obligations with a view to arighting what may seem to the legislators to have been acts of injustice.

Counsel for the appellant cite authorities to the effect that all governments are accustomed to recognize and pay moral and equitable claims though there may be no legal liability to pay them. This is conceded; but it is also true that the opinion or finding of the legislature that such an obligation existed is not necessarily binding on the courts. The case of *United States* v. *Realty Company,* 163 U. S. 427, is cited with apparent confidence. In that case the court was at pains to show that a strong moral obligation existed to support the legislation which

was there upheld. And the court said, at page 440, "It is un-necessary to hold here that Congress has power to appropriate the public money in the treasury to any purpose which it may choose to say is in payment of a debt or for purposes of the general welfare. A decision of that question may be postponed until it arises."

In a small community where the judges are often personally acquainted with litigants, and, when, at times, the calls of friendship and sympathy beckon aside, it may be difficult, in endeavoring to administer justice, to disregard the appeals and to adhere to the strict path of duty. But there can be only one proper course for a judge to follow.

However laudable may have been the motive which prompted the legislature to enact this statute, to sustain its validity would be to ignore plain legal principles, and to set a precedent which, if followed, would lead to disastrous consequences. The act trenches upon the judicial power, and it constitutes an attempt to divert public funds to private use without any moral obligation or other consideration of public policy to support it. It is not, therefore, a rightful subject of legislation.

In my opinion the ruling of the auditor should be sustained.

PERRY, J., concurring. The preliminary question is presented as to whether the auditor may attack the constitutionality of the statute. It is true that "the objection of unconstitutionality will be listened to only when it is made by one having a legal interest in defeating the statute." *In re Craig*, ante pp. 483, 490; *Territory* v. *Miguel*, 18 Haw. 402. The present case, however, does not fall within that rule. By R. L., §1514, the auditor is given "the power, by withholding his approval when necessary, to prevent the misappropriation of public funds, as well as the disbursement of public moneys in exercise of specific appropriations." Within the meaning of this section funds are misappropriated, not only when paid under or charged to an appropriation which was not intended to authorize the particular expenditure, but also when paid in the absence of any

appropriation whatever. If a statute purporting to appropriate moneys is for any reason invalid, it is as though there were no appropriation. The *duty* to prevent misappropriations necessarily accompanies the *power* and is to be performed even though in the performance it becomes necessary to question the constitutionality of a legislative enactment.

Whatever merit there may be in the view that the act is an appropriation of public moneys for a private purpose and constitutes an encroachment upon the judicial power, I think that for another reason it must be declared invalid.

Section 66 of the Organic Act of this Territory provides that "the executive power of the government of the Territory of Hawaii shall be vested in a governor, who * * *" may grant pardons or reprieves for offenses against the laws of the United States until the decision of the President is made known thereon." It is well established that whenever by the fundamental law of a State or a Territory or other jurisdiction the power of pardon is vested in an executive officer or board of officers, the grant is exclusive and the power may not, aside from constitutional amendment, be lawfully conferred upon or exercised by the legislative or the judicial department. This is in keeping with the accepted theory of our governments that the three departments, except in so far as may be clearly provided to the contrary, are separate and distinct in their functions and is an application of the rule of construction that the enumeration of the one excludes all others. When, as by our Organic Act, the power is confided to the executive branch of the government it is virtually denied to any other department and cannot, therefore, be exercised by the legislature any more than it could be exercised by the judiciary. In the distribution of the powers of government the framers of the fundamental law, in the case of this Territory the Congress of the United States, have the right to lodge the pardoning power where to them in their wisdom seems best and it is not competent for a lesser authority, in this instance the local legislature, to alter

the distribution thus made. *Singleton* v. *State,* 34 L. R. A. 251; *Haley* v. *Clark,* 26 Ala. 439; *State* v. *Sloss,* 25 Mo. 291; *State* v. *Fleming,* 26 Tenn. 151; *Baldwin* v. *Scoggin,* 15 Ark. 427; *State* v. *Nichols,* 26 Ark. 74; *Ogletree* v. *Dozier,* 59 Ga. 800; *Rich* v. *Chamberlain,* 104 Mich. 436; *Forsyth* v. *County,* 141 N. Y. 288; *State* v. *Kirby,* 51 So. (Miss.) 811; *Ex parte Garland,* 4 Wall. 333; *U. S.* v. *Klein,* 13 Wall. 128; Cooley, Constitutional Limitations, 7th ed., 243; 8 Cyc. 829. The statement in *U. S.* v. *Hall,* 53 Fed. 352, to the effect that a constitutional grant of the pardoning power to an executive officer is not exclusive is opposed to the weight of authority and, as I think, of reason.

It is equally clear that the power confided by Congress to the governor of Hawaii to grant pardons refers to and includes all manner of pardons known to the law and includes, more specifically, pardons which are partial in their operation as well as those which are full and absolute. The greater necessarily includes the less. Under the authority vested in him by section 66 the governor may in any case remit the fine imposed under the judicial sentence and leave all of the other penalties and disabilities in full force. 2 Story on the Constitution, §1504; 1 Bishop Crim. Law, §760; *Ex parte Wells,* 18 How. 307; *Perkins* v. *Stevens,* 24 Pick. 277; *Holliday* v. *The People,* 10 Ill. 214; *Cook* v. *Freeholders,* 26 N. J. L. 326; 24 Am. & Eng. Ency. L., 566, 567; 29 Cyc. 1569.

Act 144 of the Laws of 1911 was enacted in violation of these principles. It is in effect an attempt on the part of the legislature to exercise the pardoning power. The J. A. Cummins named in the act was in the early part of 1895 duly convicted (upon a plea of guilty) by a lawfully constituted judicial tribunal, to wit, a military commission, having jurisdiction of the subject-matter and of the person (*In re J. C. Kalanianaole,* 10 Haw. 29) and was by the commission sentenced to be imprisoned at hard labor for the term of five years and to pay a fine of five thousand dollars. Subsequently Sanford B. Dole,

as President of the Republic and Commander-in-Chief of its military forces, upon the recommendation of the cabinet, mitigated and modified the sentence so as to require the accused merely to pay the fine and to be imprisoned until it be paid; and the fine was paid. That portion of the sentence relating to the fine remains judicially unreversed and as to it the pardoning power, whether invoked or not, has not been exercised by those in whom it was reposed. The "full and free" pardon granted by the President of the Republic of Hawaii in July, 1898, cannot correctly be construed as intended to absolve Cummins from the fine which he had already paid and does not have that effect. It relates solely to the civil disabilities which he was still under in consequence of the conviction. The appropriation was intended to be not in aid of any pardon granted by the executive department but in spite of the executive's refusal or failure to pardon. From the recitals in Act 144 it would seem that the only reason for its enactment was that the legislature felt satisfied that the appellant pleaded guilty through inadvertence and misunderstanding, that the conviction was erroneous or unjust and that the appellant was in fact not guilty of the offense charged,—in other words was dissatisfied with the judgment of the judicial tribunal acting within its powers and therefore wished to render its sentence nugatory. However that may be, the effect of the appropriation, expressly stated to be "for the purpose of refunding to said J. A. Cummins the fine," and of its enforcement, would be to remit the fine judicially imposed,—just as clearly as though an act to relieve Cummins from the necessity of paying it had been passed prior to its payment. "It never could have been the intention of the framers" of our Organic Act "to prohibit the legislature from remitting a fine and yet allow that body to accomplish the same result by compelling the fine when paid to be refunded. If that could be done, the prohibition would be nugatory." *Haley* v. *Clark,* supra. See also *Singleton* v. *State* and other authorities supra. That which the legislature may

not do directly, it may not do by indirection. The mere lapse of time since the conviction and sentence is immaterial. If the legislature may accomplish this result at the end of sixteen years, it may do so sixteen months or sixteen days after sentence.

It has been said in argument that the act cannot be an exercise of the pardoning power vested in the governor because at the time of its enactment, after the payment of the fine, the governor had not any power to pardon. It seems to me that this attempted answer is insufficient. A pardon "is an act of grace * * * which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." *U. S.* v. *Wilson*, 7 Peters 149, 160. The statute under consideration is an act of grace exempting the present appellant from punishment which has been judicially inflicted upon him for a crime of which he was duly convicted. The character of the statute as an act of grace exempting from punishment is not affected by the mere fact that the act was done after the payment of the fine into the governmental treasury. The power to bestow such an exemption is by our fundamental law vested in the governor alone. That as to the remission of a fine it can be exercised, if at all, only within a stated time, that is to say, before payment of the fine, does not operate to make the grant any the less exclusive or to transfer it to the legislative department after the expiration of the time stated.

For these reasons I concur in the conclusion that the ruling of the auditor should be sustained.

DE BOLT, J., dissenting. I concur in the opinion of Mr. Chief Justice Robertson as to the right of the auditor to raise the question as to the validity of the statute; but as to the merits of the appeal I am unable to concur in either of the foregoing opinions, or in the conclusion reached by the majority. The chief justice concludes that the statute in question is invalid because it "trenches upon the judicial power, and it constitutes

an attempt to divert public funds to private use without any moral obligation or other consideration of public policy to support it." Mr. Justice Perry concurs in the conclusion reached by the chief justice, but upon the ground that the statute "is in effect an attempt on the part of the legislature to exercise the pardoning power."

As I view the questions involved in this appeal, the legislature in the enactment of this statute did not trench upon or attempt to exercise any of the powers of either of the other two co-ordinate branches of the government, they having fully exercised all their powers in the premises, but it acted wholly within its own province, exercising its legislative discretion upon one of the "rightful subjects of legislation." Sec. 55, Org. Act; 28 Am. & Eng. Ency. Law (2d ed), 60; *Maynard* v. *Hill,* 125 U. S. 190.

The Organic Act transferred from Congress to the territorial legislature the power to pass laws for the people of the Territory, and it takes the place of a constitution as a fundamental law of the local government. 28 Am. & Eng. Ency. Law (2d ed), 59; *Ferris* v. *Higley,* 20 Wall. (U. S.) 375; *Nat'l. Bank* v. *Yankton County,* 101 U. S. 129.

The conclusion reached by the majority, each member by a separate and distinct process of reasoning, is, in effect, a holding that the statute is unconstitutional. Can it be successfully claimed that the invalidity of the statute is placed beyond reasonable doubt when the members of the court declaring it invalid are each unable to adopt the reasoning of the other? Presumably each entertains doubt as to the soundness of the views expressed by the other. "If it be doubtful, and the legislature has seen proper to exercise the power, the judiciary should not interfere. The doubt is then to be solved in favor of the legislative action." *Norman* v. *Ky. Bd. Managers World's Columbian Exp.,* 20 S. W. 901. "A statute will not be declared void in whole or in part, unless its invalidity is distinctly pointed out and made clearly manifest. The general rule is

that every intendment must be given in its favor." *Crowley* v. *State,* 11 Org. 512.

"It has been said by an eminent jurist, that when courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained.

"The question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case." Cooley's Const. Lim. (7th ed), 109, 252. The rule is universal that courts will presume in favor of the constitutionality of a law, until the contrary clearly appears. *Adams* v. *Storey,* Fed. Cas. No. 66; *U. S.* v. *Mackenzie,* Fed. Cas. No. 18,313; 6 Am. & Eng. Ency. Law (2d ed), 1086; 8 Cyc. 801. But, as I view the statute, there is no occasion to indulge in presumptions in favor of its validity. To my mind it is clear that the legislature had the power to pass it, and having done so, we are not concerned in the motives or reasons which prompted its enactment. Cooley's Const. Lim. (7th ed), 257; 6 Am. & Eng. Ency. Law (2d ed), 1087; 8 Cyc. 804.

The chief justice, upon the proposition that the statute trenches upon the judicial power, cites the following cases: *Knote* v. *United States,* 95 U. S. 149; *Roberts* v. *State,* 51 N. Y. S. 691; *Allen* v. *Board of Auditors,* 122 Mich. 324; *State* v. *Railroad,* 71 Conn. 43; *Haley* v. *Clark,* 26 Ala. 439. Let us examine these cases in the order named.

*Knote* v. *United States,* as I read it, does not in any way militate against the validity of the statute before us, but on

the contrary, it clearly recognizes the doctrine for which the appellant contends, namely, that when money, as a fine, penalty or forfeiture, has been paid into the treasury the judicial and executive departments of government thereby lose all jurisdiction, power and control over it, and that the legislative department thereupon acquires sole and exclusive power over it and it can only be withdrawn by an appropriation by law.    Art. 1, Sec. 9, Constitution of the United States; Secs. 52, 55, Org. Act.    Observe the following language, quoting from page 154 of the case cited: "If the proceeds have been paid into the treasury, the right to them has so far become vested in the United States that they can only be secured to the former owner of the property through an act of Congress.    Moneys once in the treasury can only be withdrawn by an appropriation by law."    There is not even an intimation by the court that the suggested legislation for the express purpose of withdrawing the money from the treasury for the purpose of refunding it would, in any way whatsoever, "trench" upon or be an attempt to "exercise" any of the "powers" of either of the other coordinate branches of the government, although the property of the claimant had been seized by the Federal authorities and declared forfeited, was sold, and the proceeds paid into the treasury, in pursuance of an order of a court of competent jurisdiction as a punishment for his treason and rebellion, for which he was subsequently pardoned.    To the same effect, see *United States* v. *Padelford*, 9 Wall. (U. S.) 531; *Osborn* v. *United States*, 91 U. S. 474; *Armstrong's Foundry*, 73 U. S. 766; *Ill. Cent. R. R. Co.* v. *Bosworth*, 133 U. S. 92; 2 Op. Atty.-Gen. 329; 8 Op. Atty.-Gen. 281; 14 Op. Atty.-Gen. 599; 16 Op. Atty.-Gen. 1.

In *Roberts* v. *State*, Roberts was convicted and sentenced to the state prison for a period of twenty years, and after serving about two years he was pardoned.    The legislature then passed an act authorizing him to present a claim to the board of claims for damages sustained by him by reason of his improper con-

viction and imprisonment and to award such compensation as should appear just and reasonable. It is apparent that Roberts proceeded upon the theory that he had a valid claim against the State, such as a court of law could entertain. The court in that case said: "We conclude that, if the statute in question did not have the effect of validating or creating the claim of the plaintiff presented to the court below, it was ineffectual; and a finding of that court cannot be sustained, as in that case no legal demand existed in favor of the plaintiff against the state." It is clear that the court did not have before it, or consider, the question as to the power of the legislature to make an appropriation for the payment of a claim such as is now before this court. The case is clearly distinguishable from the case at bar.

In *Allen* v. *Board of Auditors,* Allen had been convicted and sentenced to imprisonment for a term of years and after serving a portion of his term he was pardoned, whereupon the legislature passed a joint resolution directing the board of state auditors to investigate his claim, and if found to be true, i. e., innocent, to allow him a sum not to exceed ten dollars per month for a period not to exceed ten years. The court held that the joint resolution was an attempt on the part of the legislature to create a court of appeals, aside from the constitutional courts, to determine the guilt or innocence of a convicted criminal, which was "a violation of the plain provisions of the constitution establishing courts, and conferring the exclusive jurisdiction upon them to try civil and criminal cases." It is obvious that no such questions are involved in the case at bar. The question as to the power of the legislature to make an appropriation in a case similar to the one under consideration was not before the court in that case. One of the reasons which the court assigned why Allen was not entitled to anything was, that "the state received nothing, but, on the contrary, incurred expense, by reason of his arrest, trial and imprisonment," which reason does not exist in the case at bar. The appellant

caused the government but little, or no expense, and, moreover, the people have had the use of the $5000 he paid as a fine for over sixteen years, interest on which, at the legal rate would now amount to about $5000, which the appellant does not ask for.

Viewing the matter from the standpoint of the people—the tax-payers—there is an important, practical distinction, financially, between punishment by imprisonment and punishment by fine. In the case of imprisonment, in the event of an appropriation being made for the benefit of the person who has suffered, the money must necessarily be raised by taxation, i. e., paid by the people; while in the case of a fine, the appropriation is simply a refunding of the money to the person who paid it into the treasury, which does not involve a question of taxation or payment by the people.

*State* v. *Railroad* did not involve any question such as we are called upon to determine in this appeal. In that case it appears that after the court had entered judgment requiring the respondent to construct a certain bridge over its railroad, the legislature passed an act providing that no structure should be built over any railroad, until the railroad commissioners should have determined the length, width, material and plan of the structure, its height above the roadbed, and the necessity for its construction. An alternative writ of mandamus having issued to compel the respondent to construct the bridge in question, respondent moved to quash the writ on the ground, inter alia, that the railroad commissioners had not determined the matters required of them by the statute. The court overruled the motion and issued a peremptory writ. The respondent appealed. The appellate court in affirming the action of the lower court held, "that inasmuch as the language of the Act did not expressly nor by necessary implication make it applicable to pending cases—much less to cases already adjudicated—the Act could not be construed to affect such cases. Whether the legislature has the power, under the Constitution of this State,

to open or vacate final judgments and provide another tribunal or retry matters once determined by the judicial department, *quaere.*" The statute in question does not attempt to open or vacate any judgment, nor to provide another tribunal to retry matters heretofore determined.

*Haley v. Clark,* was an application for a writ of mandamus to compel Clark, as county treasurer, to pay to Haley and three others the sum of $500, which he was directed to pay to them by an act of the legislature, entitled, "An act for the relief of securities of John Douglass, late clerk of the Circuit Court of Marion County." Clark demurred on the ground that the act was unconstitutional. The demurrer was sustained and the applicants for the writ appealed. Douglass, by reason of some delinquency, became liable to a fine of $500, for the payment of which, the appellants were his sureties. Douglass having failed to pay the fine the sureties paid it. The case does not disclose upon what grounds the act was based. It is evident, however, that it was not founded upon any equitable or moral obligation, such as exist in the case at bar. So far as we are able to gather from the language of the case, the act was a mere gift, "a donation," as counsel for the appellant admitted. The court, however, proceeded upon the theory that the act in question was an attempt to remit a fine, that is to exercise the pardoning power. Assuming that no pardon had been granted in that case, the stain and stigma of the offense, of course, remained. This could only be removed by a full pardon, and thus an attempt to "remit" the fine was an attempt to exercise some part or all of the pardoning power. But where a full pardon has been granted there remains no stain, no stigma, no penalty, no fine—all have been remitted—although the money paid as a fine may have passed beyond the reach of the pardoning power, and for that reason cannot be refunded, except by an act of the legislature. In the case at bar there remains no fine to remit, that was included in the pardon. The money paid as a fine, however, can and should be refunded by authority of the

legislature—the only department of the government having any power over it.

Mr. Justice Perry also cites *Haley* v. *Clark.* Therefore, what I have to say on the point suggested by that case may be stated now; and in this connection I cite *Cook* v. *Freeholders of Middlesex,* 26 N. J. L. 326, 328, wherein the court said: "There is no doubt that the word *remit* is sometimes used in the sense of return or restoration, though in this sense Dr. Johnson says that the word is obsolete. So in case of 'remitter' it is said, by Blackstone, that the party is remitted, or sent back by operation of law to his ancient and more certain title. 3 Black. Com. 20. But as applied to the penalty of crime, the word has a totally different signification. It is used as equivalent to pardon or discharge from the penalty of transgression. 'To remit' is defined by our best lexicographers to be to forgive, to pardon, to release from punishment or penalty. It is so uniformly used in that rich mine of pure Anglo-Saxon, the English translation of the New Testament, numerous instances of which will occur to every familiar reader of that volume. Thus in *John* XX.: 23, 'whomsoever sins ye remit they are remitted.' It is used by legal writers to import discharge from the penalty of transgression. In this sense, Blackstone uses it when he says the punishment of the offender may be remitted and discharged by the concurrence of all parties interested. 4 Black. Com. 316. Pardon, in the law, is the remitting or forgiving of an offense committed against the King. Jacobs Law Dict., 'Pardon.' A full and free pardon in itself, necessarily involves a remission of the penalty of the crime. Hawk., b. 2, 37, §48. It is absurd to think of a man's being pardoned, and yet left to pay the fine, to suffer imprisonment, or to endure any of the penalties of his transgression, subsequent to his pardon."

The legislature in the enactment of the statute before us did not attempt to give or donate money to Mr. Cummins as a mere gratuity; nor did it attempt to remit a fine; nor did it attempt

to interfere with or in any way to question the judgment of the military commission. The matter had passed beyond the control of the judiciary and executive. The power of each had been fully exercised. But, considering the equity and natural justice of the claim, as well as other proper matters, including the historical events covering the period of transition from the Monarchy to the organization of the Territory, that there was strife and turmoil in the land, and that the political and economical views of honest men were in conflict, all of which we are bound to assume the legislature considered, and in the exercise of its legislative discretion, which we have no right to question, it appropriated $5000 for the purpose of refunding, not giving, to Mr. Cummins the amount of the fine,—not to remit, forgive, or pardon,—because the executive had already performed that act of clemency without limitation.

Whether the claim was founded on the broad principles of equity and natural justice, and should or should not have been recognized, was a legislative and not a judicial question. The legislature having determined this question, the judiciary is bound. Courts have no more right to review the exercise of legislative discretion than the legislature has to meddle with the judgments of the courts. Each, within its own province, is supreme and independent, and neither is answerable to the other for its errors or failure to fulfill its mission in the governmental scheme.

The claim in question being founded upon equity and natural justice, it was within the power of the legislature to recognize it as a debt due from the people to Mr. Cummins. In *United States* v. *Realty Co.,* 163 U. S. 427, 440, the court said: "Under the provisions of the Constitution, (article 1, section 8,) Congress has power to lay and collect taxes, etc., 'to pay the debts' of the United States. Having power to raise money for that purpose, it of course follows that it has power when the money is raised to appropriate it to the same object. What are the debts of the United States within the meaning of

this constitutional provision? It is conceded and indeed it cannot be questioned that the debts are not limited to those which are evidenced by some written obligation or to those which are otherwise of a strictly legal character. The term 'debts' includes those debts or claims which rest upon a merely equitable or honorary obligation, and which would not be recoverable in a court of law if existing against an individual. The nation, speaking broadly, owes a 'debt' to an individual when his claim grows out of general principles of right and justice; when, in other words, it is based upon considerations of a moral or merely honorary nature, such as are binding on the conscience or the honor of an individual, although the debt could obtain no recognition in a court of law. The power of Congress extends at least as far as the recognition and payment of claims against the government which are thus founded. To no other branch of the government than Congress could any application be successfully made on the part of the owners of such claims or debts for the payment thereof. Their recognition depends solely upon Congress, and whether it will recognize claims thus founded must be left to the discretion of that body. Payments to individuals, not of right or of a merely legal claim, but payments in the nature of a gratuity, yet having some feature of moral obligation to support them, have been made by the government by virtue of acts of Congress, appropriating the public money, ever since its foundation. Some of the acts were based upon considerations of pure charity."

Cooley on Taxation (pp. 69, 91), lays down the same broad, humane principles, as expressed in the case just cited. See also *Brewster* v. *City of Syracuse,* 19 N. Y. 116; *United States* v. *Weld,* 127 U. S. 51; *Williams* v. *Heard,* 140 U. S. 529; *Comegys* v. *Vasse,* 1 Pet. (U. S.) 193; *Emerson* v. *Hall,* 13 Pet. (U. S.) 409; *United States* v. *Jordan,* 113 U. S. 418; *Booth* v. *Town of Woodbury,* 32 Conn. 118, 128; *Agnew* v. *Brall,* 124 Ill. 312, 316; *Blanding* v. *Burr,* 13 Cal. 343, 354; *In re Flournoy, Atty.-Gen.,* 1 Ga. 606; *Cook* v. *Freeholders of*

In re Cummins, 20 Haw. 518.

*Middlesex,* 27 N. J. L. 637, 643; *Cope* v. *Com.,* 28 Pa: St. 297; *Guilford* v. *Chenango County,* 13 N. Y. 143.

As to the pardoning power, I agree with Mr. Justice Perry, that it is vested in the executive and cannot be exercised by either of the other departments of the government.

Mr. Cummins having paid the fine imposed upon him and the money with which the fine was paid having been covered into the treasury, he was subsequently granted a full pardon.

"A pardon is an act of grace which proceeds from the power intrusted with the execution of the laws, and exempts the individual on whom it is bestowed from the punishment which the law inflicts for a crime that he has committed.

"A pardon is full or absolute when it freely and unconditionally absolves the party from all the legal consequences of his crime and his conviction, direct and collateral; including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided." 24 Am. & Eng. Ency. Law (2d ed), 551; 29 Cyc. 1559, 1566.

While a full pardon puts an end to all further punishment, it does not afford any relief for what has been suffered (29 Cyc. 1567), because a pardon is not restrospective, it does not operate upon that part of the sentence which has been executed. But it blots out the crime and removes the stain and stigma of the offense committed. A fine, if it has not been paid into the treasury, i. e., if it remains within the scope of the pardoning power, it is impliedly remitted, forgiven, as an incident to the pardon. If, however, the fine has been paid into the treasury, obviously, it has passed beyond the power and control of the executive to refund, athough the crime, of which it was an incident, has been absolutely obliterated—every stain of it washed away. "A pardon is an act of grace by which the offender is released from the consequences of his offence, so far as such release is practicable and within control of the pardoning power." *Ill. Cent. R. R.* v. *Bosworth,* 133 U. S. 92, 104. On the other hand, should the legislature, before the fine is paid into

the treasury, as well as before the exercise of executive clemency, attempt to *remit* the fine, unquestionably, that would, not only be an attempt to exercise the pardoning power, but it would also be an interference with the judgment of the court. Neither department of the government can invade the province of another or assume any power over any matter under the control of either of the others. This view is practical, and as matters pass from the control of one to another, the power of the former ceases and the power of the latter may be invoked. This affords a full and complete exercise of all the functions of each department, and is in perfect harmony with constitutional requirements and inhibitions.

The cases cited by Mr. Justice Perry on this phase of the question are, as it seems to me, clearly distinguishable from the case at bar. Many of the observations there expressed I accept unhesitatingly.

In *Singleton* v. *State,* 34 L. R. A. 251, the legislature attempted to restore to Singleton, who had been convicted of the crime of larceny, his civil rights. The mere statement of this proposition shows that the legislature attempted to exercise the pardoning power.

In *State* v. *Sloss,* 25 Mo. 291, the legislature attempted to release Sloss, as well as others, then indicted for certain offenses. Obviously, this was an unconstitutional act.

In *State* v. *Fleming,* 26 Tenn. 151, the legislature, by resolution, attempted to discharge Fleming and another who were indicted for selling spirituous liquors. Comment is unnecessary.

In *Baldwin* v. *Scoggin,* 15 Ark. 427, two persons had been fined in a certain sum for which a promissory note had been given and before its payment the governor pardoned the defendants, thus remitting the fine, which, of course, had not passed into the treasury, but remained under his control. As the court said in that case, "a note so given and received in such case, being no payment or satisfaction, the fine had not

passed beyond the pardoning power of the governor."

*State* v. *Nichols,* 26 Ark. 74, does not seem to have any bearing upon any phase of the question before us for consideration. The court indulges in quite a lengthy discussion as to the pardoning power not naturally or necessarily being an executive function.

In *Ogletree* v. *Dozier,* 59 Ga. 800, it appears that one Moore had been sentenced "to work on the chain-gang." The county commissioners, under an act of the legislature, hired him to Ogletree to work on his plantation, or elsewhere, at Ogletree's pleasure. Ogletree demanded Moore from the sheriff, who refused to give him up. Ogletree brought habeas corpus. The court held that the act of the legislature, so far as it permitted the change of the sentence of the court from work on the chain-gang to the hire of the convict to a private person for private work, was unconstitutional.

*Rich* v. *Chamberlain,* 104 Mich. 436, simply shows that an act of the legislature, which provides for an "Advisory Board in the Matter of Pardons," and determines its powers and duties is not in conflict with section 11, art. 5, of the Constitution, which vests the pardoning power exclusively in the governor, "subject to regulations provided by law relative to the manner of applying for pardons."

*Forsyth* v. *County,* 141 N. Y. 288, merely holds that a statute which in terms authorizes courts of criminal jurisdiction to suspend sentence in certain cases, is not violative of the provision of the state constitution (§5, art. 4) giving to the governor the power to grant reprieves and pardons. See *Rep. Haw.* v. *Pedro,* 11 Haw. 287; R. L. Chap. 184.

In *State* v. *Kirby,* 51 So. 811, held that an act authorizing the board of supervisors to discharge a convict from jail, if unable to labor from bodily infirmity, violates the constitution which confers upon the governor the sole power to pardon.

Having examined other cases cited and feeling that they are not in conflict with the views which I have endeavored to set

In re Cummins, 20 Haw. 518.

forth in this opinion, I deem it unnecessary to prolong the matter. I am of the opinion that Act 144 of the Laws of 1911 is valid and constitutional.

*Lorrin Andrews* and *Eugene Murphy* for appellant.

*Alexander Lindsay, Jr., Attorney General,* for the Auditor.